Totten J.,
delivered the opinion of the court.
This case is an issue deoisavit vel non, on a script *632 purporting to be the will of Nelson Nailing, deceased. The verdict of the jury was in favor of the contestant, declaring that the script is not a will — thereon the plaintiff, who propounded it, appealed in error to this court.
/ The question is, did the circuit judge err in refusing to grant a new trial • on the facts- and merits of i- the case ?
It is a settled and inflexible rule of this court, in the exercise of its. revisory jurisdiction, not to grant a new trial merely on the facts, where there is evidence to support the verdict, or a contrariety of evidence on the issue in the ease.
The reason is obvious. This court can see the case only as it appears through the imperfect medium of a bill of exceptions. The evidence is often not fully stated, or inaccurately stated. The manner, intelligence and credit of the witnesses are of necessity, obscurely and imperfectly represented.
In considering the merits of a verdict, therefore, this court will hesitate to pronounce against the opinion of the judge who tried the cause, and- who declares himself satisfied with the verdict. And if no principle of law be violated by his action in the case, the verdict will not be disturbed except in the extreme cases before .stated. England vs. Burt, 4 Humph. R., 399. Jones vs. Jennings, 10 Humph., 428. Crutcher vs. Crutcher, 11 Humph., 277. Graham on New Trials, 405.
In this view of the subject, it is just and reasonable-that a more liberal rule should govern at nisi prius, than the one which this court from a sense of' duty, has *633 adopted for its own action. Certainly it is competent and proper for the judge at nisi frius to weigh the evidence, and if it appear to him that the verdict stands opposed to the justice and equity of the case, it ought to he set aside, and a new trial granted, if the matter in issue be of sufficient consequence. Graham on Hew Trials, 368. Jackson vs. Sternburgh, 1 Caines, 163.
In the present case, it is insisted by the plaintiff, that the verdict is plainly against the weight of evidence; that in fact there is no proof in the record to support it — and therefore a new trial ought to be granted.
On the contrary, it is argued, that in view of the well settled rule and practice of this court on the subject, it is not a proper case for a new trial. We have carefully considered the case as it appears in the proof, and in our judgment it is olear and evident, that the verdict is not a true response to the evidence.
1. As to the capacity of the testator; we observe that he was eighty-six years of age at the execution of his will, Sept. 3, 1850. The two attesting witnesses to the will, had known him for more than a quarter of a century, and bear evidence to the soundness and force of his mental faculties at the time. One of them, Dr. Rogers, says, the testator was of “strong will” and “sensible and cheerful as he had ever been:” the other, Mr. Yincent considered his mind “sound and good.”
In the opinion of witnesses on the part of contestants, the memory of the testator had suffered decay, but, no fact appears from which it can be inferred, that there was any defect in his judgment and understanding. ’Tis tnie, he was in feeble health at the time, and con *634 fined to Ms room from an injury received in the hip by a fall some two years before.
He lived after the execution of his will in September, 1850, until March,’ 1852, when he died.
¥e think there is no reason to doubt the testamentary capacity of testator.
“A man may freely make his testament, how old soever he may he, for it is not the integrity of the body, hut of the mind, that is requisite in testaments.” Swinh. part 2, § 5.
“The law looks only to the competency of the understanding: and neither age, nor sickness, nor extreme distress, or debility of body will affect the capacity to make a will, if sufficient intelligence remains.” Van Alst vs. Hunter, 5 Johns. C. R., 148.
2. It is argued that the testator was imbecile from, age and disease, and that he was fraudulently influenced by interested persons, in making the dispositions contained in his will.
We are of opinion that this argument is founded in mere assumption. There is nothing in the proof on which it can be predicated. The testator lived in the bosom of his family, and sustained towards them all very ldnd and affectionate relations. The will itself contains intrinsic evidence in its favor; it is a reasonable and natural will/ we do not see, if it were a matter in itself of any consequence, that there is any considerable inequality in the dispositions it makes of his property among his children. By' economy and good judgment in his affairs, he had acquired .a considerable estate: some eighty slaves, lands and other property, which he divides pretty equally *635 among, his four children, after making a liberal provision , for Ms wife. Some of tbe property named in tbe will was already advanced to tbe children, as circumstances required.
It is supposed, that tbe testator’s- wife and bis daughter, Sarah Bell, exercised, a, controlling influence over tbe volition of tbe testator in making his will.
We see nothing in tbe case to warrant such a conclusion. It is very evident that tbe testator entertained for- bis wife and daughter, who attended him during bis protracted confinement, a sentiment of much kindness and respect, and that he was disposed to gratify them in any reasonable request. But we see no evidence of any dominion over the mind and discretion of the testator. Nor do we see any, evidence of an attempt to acquire and assert such dominion over bis. mind and discretion in relation to tbe dispositions made in bis will. On tbe contrary, tbe will was made with care and great deliberation. Tbe writer of tbe present will, Dr. Rogers, bad prepared two wills before, tbe first one three years before, in which certain alterations are made in tbe present will. They were not suggested by tbe wife or daughter.
Tbe principal alteration was a change in tbe quantum of tbe estate given to tbe testator’s wife. In tbe former will it was limited to her for life; in tbe present it is, given in fee.
It was done on tbe advice and remonstrance of tbe writer of tbe will, in order to maintain tbe wife of the testator in an independent position as tbe bead of tbe family.
We may observe, that tbe influence which vitiates a *636 will, is suet as deprives the testator of his free agency and discretion. It is moral force, amounting to coercion which the testator in a spirit of submission, has no power to resist. 1 Will, on Ex., 37. Mountain vs. Bennett, 1 Cox, 355.
Certainly no influence of the hind appears in the present case: and if in fact, it existed, it does not appear that it was exercised, or that any attempt was made to exercise it. I
3. A , deed of gift made by the testator to his children in 1825, for twenty-nine slaves, was read in evidence. The record of an action ’for slander, of the same date, instituted against the testator, was also read. It is objected by the plaintiff, that the deed was incompetent as evidence, it having no relevancy to the issue in the case.
We cannot say that it was incompetent, it being explanatory of the condition of the testator’s estate, which he was now disposing ■ by his will. But certainly, as the case was developed by other proof, the deed was of no value whatever, as evidence in the' case.
It was made to evade the dreaded consequences of a recovery in the action of slander. It was not considered and acted upon' by the parties as an absolute gift; and the testator continued to claim and possess the slaves as his own, as though the gift had never been made. It was therefore proper to dispose of them by his will.
Other deeds were read, where the testator had conveyed or caused to be conveyed certain slaves to his children, which slaves are also given to them by his will. To these deeds the plaintiff objects. Eor the *637 reason before stated, we cannot consider them incompetent. The will, however, was intended, no doubt, as a confirmation of tbe former gifts, where any had been made.
We may observe in regard to this documentary proof, to which we have referred, that though it be legally competent, yet as thp case appears, no conclusion can be deduced from it material to the matter’ in issue.
Our judgment rests, therefore; exclusively upon the facts and merits of the cas^ and being of opinion that the verdict is not only J^ainst the weight of evidence, but that there is indeed, no evidence to support itj the judgment will be ‘reversed, and the cause remanded for a new trial. ■ ' ■
Judgment reversed.