Keith BILLS, Appellee,

v.

Ruth Ann Wooten LINDSAY and Earl Lindsay, Co–Executors of the Will of Robert Lee Donelson Wooten, Deceased, Appellants.

Court of Appeals of Tennessee, Western Section.

Sept. 1, 1993.

Application for Permission to Appeal, Denied by Supreme Court Dec. 28, 1993.

---

Rondal T. Wilson, Shelbyville, for Contestant/Appellee.

Allen Shoffner, Shelbyville, for Proponents/Appellants.

CRAWFORD, Judge.

This appeal involves a will contest concerning the Last Will and Testament of Robert Lee Donelson (Mike) Wooten. Contestant is Keith Bills, son of testator's deceased daughter and the proponents of the Will are Ruth Ann Wooten Lindsay and husband, Earl Lindsay, the daughter and son-in-law of the testator, co-executors of the estate.

The complaint alleges that a paper writing dated June 20, 1989, previously admitted to probate in common form, is not the lawful Will of the testator because he lacked testamentary capacity and because he was unduly influenced by proponents of the Will. The proponent's answer denies the material allegations of the complaint and joins issue thereon.

Robert Lee Donelson (Mike) Wooten was a farmer in Bedford County. In 1933 he married Ruth Gill Shearin, a widow with one child, James Shearin, who was then about 4 years old. Mike and Ruth Wooten had three children born of their marriage, Betty, Ruth Ann and Mary. Betty Wooten married Elbert Bills and they had two children, Keith Bills and Don Bills. Ms. Bills died in 1984 survived by Keith and Don Bills. Ruth Ann Wooten married Earl Lindsay and Mary Wooten never married.

In 1961, testator's wife, Ruth, had a stroke and the Lindsays moved to Bedford County and cared for Mrs. Wooten in the Wooten home until her death in 1978. The Lindsays subsequently bought a farm adjacent to testator's farm where they operated a dairy. For several years prior to testator's death, the Lindsays and the testator swapped work and helped each other with the farm work. Testator was active and in good health until April, 1989, when he was diagnosed as having a form of cancer known as lymphoma. He was under the care and treatment of Dr. Marvin Lewis, an oncologist who recommended chemotherapy treatment which began on May 3, 1989, and ended on May 19, 1989. Because of weakness and weight loss, Dr. Lewis admitted the testator to the Middle Tennessee Medical Center in Murfreesboro on June 2, 1989, where he remained until discharged by Dr. Lewis on June 16, 1989. At the time of his discharge from the Murfreesboro Hospital, testator was not on any medication and no medication was prescribed for him to take after discharge. At this time he had overcome all of the side effects of chemotherapy treatment. On the date of discharge it was Dr. Lewis' opinion that testator was rational, not confused or disoriented, and that he was competent to make a will. The testator went home with the Lindsays and remained there until June 21, 1989, when he was admitted to Bedford County Hospital under the care of his family physician, Dr. Earl Rich.

On June 20, 1989, the day before he entered the Bedford County Hospital, testator contacted by telephone Nowlin Taylor, a Shelbyville attorney and the General Sessions and Juvenile Court Judge in Bedford County, and gave Mr. Taylor instructions for the preparation of his Will. The attorney,

who had known the testator for about 25 years and had done other legal work for him, described the testator as out-spoken, strong willed and opinionated. Testator gave detailed instructions to the attorney concerning the disposition of his property in his Will. Although the telephone call was made from the Lindsay home, the Lindsays did not participate in the conversation. The attorney prepared a draft of the Will according to the testator's instructions and, accompanied by his legal assistant, Judy Haskins, went to the Lindsay residence to present the Will to the testator. The Lindsays were not present when the attorney and Ms. Haskins presented the Will to the testator or at any time while the Will was executed. Mr. Taylor, the attorney, discussed the provisions in the Will with the testator. The testator read the Will over himself. Both the attorney and Ms. Haskins testified that testator had an understanding of the nature and extent of his property and he completely understood the disposition he was making of his property. Although the testator was in poor physical condition, the witnesses described his mental condition at the time the Will was executed as "alert", "rational", "very coherent", and "made good sense". The testator paid the attorney's fee for preparation of the Will.

From the time the testator was discharged from the Middle Tennessee Medical Center on June 16, 1989, until his admission to the Bedford County Hospital on June 21, 1989, he stayed in the Lindsay home, where his daughter Ann Lindsay cared for him. His condition deteriorated, however, and Ann Lindsay was advised by a home bound nurse that he should be placed in the hospital. Due to his dehydration he was subsequently admitted to the Bedford County Hospital and placed under the care of the family physician, Dr. Earl Rich. Dr. Rich testified that at the time of admission to the Bedford County Hospital, the testator was not on any medication and was well-oriented and understood everything the doctor told him. The testator died in the Bedford County Hospital on June 27, 1989.

In the Will, testator gave his truck and farm machinery to Earl Lindsay, a tract of farmland of 105 to 110 acres adjacent to the Lindsay land to Ann and Earl Lindsay, a tract of land of 40 acres to his stepson James Shearin, which was adjacent to other land owned by Shearin. He directed that his remaining farmland of about 70 acres, his livestock and other property be sold and the proceeds divided $5,000.00 to Keith Bills, the contestant herein; $1,000.00 to Jimmy Shearin his step grandchild; $3,000.00 to Lisa Ann Worley, Ann Lindsay's daughter; and $1,000.00 to Ann Lindsay's granddaughter. He directed that the remainder of the proceeds from the sale of the property be placed in trust for the benefit of his daughter, Mary Wooten. He appointed Earl and Ann Lindsay as trustees of this Trust and as co-executors of the estate. Additionally, the Will provided for the division of household goods and furnishings among Ann Lindsay, Mary Wooten, James Shearin and Lisa Worley in equal shares. The Will also contained a provision that Don Bills, his grandson, was intentionally omitted from the Will.

The case was submitted to the jury on instructions for a general verdict and the jury returned a general verdict that the Will was invalid, upon which judgment was duly entered. The proponents of the Will have appealed and present eleven issues for review.

■ The first issue is whether the trial court erred in not granting summary judgment to the proponents of the Will. Since the trial court's denial of the summary judgment was predicated upon the existence of a genuine issue of fact, that decision is not reviewable where there has been a judgment rendered after a trial on the merits of the case. *Mullins v. Precision Rubber Prods.*, 671 S.W.2d 496 (Tenn.App.1984); *Tate v. Monroe County*, 578 S.W.2d 642 (Tenn.App. 1978). This issue is without merit.

■ The second issue for review is whether the trial court erred in overruling the proponent's motion for a directed verdict made at the close of the contestant's proof and renewed at the close of all the proof. A motion for judgment in accordance with their motion for directed verdict was duly made post trial.

Proponents contend that there is no evidence that testator lacked testamentary capacity and no evidence of undue influence; therefore, the trial court should have granted a directed verdict.

■ The rule for determining a motion for directed verdict requires the trial judge and the reviewing court on appeal to look to all of the evidence, take the strongest legitimate view of it in favor of the opponent of the motion, and allow all reasonable inferences from it in his favor. The court must discard all countervailing evidence, and if there is then any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. *Tennessee Farmers Mut. Ins. Co. v. Hinson,* 651 S.W.2d 235 (Tenn.App.1983).

■ By stipulation, the due and formal execution of the Will was established; therefore, the contestant has the burden of proving lack of testamentary capacity or undue influence. *In re Estate of Elam,* 738 S.W.2d 169 (Tenn.1987).

In considering the propriety of a directed verdict, we obviously need not prolong the opinion by detailing proponent's evidence. We will, however, briefly review evidence introduced on behalf of contestant concerning the issues of testamentary capacity and undue influence. Jack Sanders testified that he visited the testator twice while he was in the Murfreesboro Hospital. He did not know the dates of either of the visits. He testified that on the first visit the testator seemed to be preoccupied with talking about the past. On his second visit he felt that the testator was not as well as he had been; the testator had told him he could not "tell who we were when we first came in." He also visited the testator when he went to the Bedford County Hospital but he did not remember the date of that visit. He felt as if the testator did not know that he was in the room. He admitted that the testator could have been asleep at that time.

Mary Sanders, Jack Sander's wife, testified that she accompanied her husband on the visits he made. She also could not remember the dates of the visits. She reiterated that on the first visit the testator was preoccupied with talking about the past. She thought the second visit was on the day before he was discharged from the hospital. Due to his poor eyesight, the testator did not recognize her until she began talking. She also testified that testator was unaware that he was exposing himself and she pulled the covers up over him. Additionally, she thought the visit in the Bedford County Hospital was on the day after he entered the hospital, and she did not believe that he knew that she was present in the room.

Polly Frazier testified that the testator was her brother-in-law. In describing him, she stated that he was a strong-willed man and was not easily led by anybody. She testified that she went to see him when he was in the Murfreesboro Hospital and that he talked about the past a great deal. She said it was "more like he was reminiscing. Of course, at my age, I do too." She testified that he was awfully weak when she saw him and "I don't think there's any way in the world that Mike could have made a Will." Frazier testified that when she visited the testator in the hospital in Murfreesboro, he knew who she was. He also knew her husband who accompanied her.

James Shearin testified that he was the testator's stepson and that he visited the testator three times while he was in the Murfreesboro Hospital. He observed that testator was in a debilitated condition, was unable to feed himself and seemed to be preoccupied with the past. Shearin also visited testator two or three times while he was in the Bedford County Hospital and his condition had markedly deteriorated. He opined that on the occasions he saw the testator, the testator lacked mental capacity to make a will.

The contestant also relies upon testimony of proponent, Ann Lindsay to the effect that the testator's condition deteriorated from June 2 until the date of his death. She further testified that the testator had no significant nourishment after he got out of the hospital the first time and he was dehydrated when he was admitted to the Bedford County Hospital.

The contestant asserts that the testimony of the aforesaid witnesses raises an inference that the testator lacked capacity to make a will due to his debilitated physical and mental condition. He also contends that testator's malnourished and dehydrated condition during the period of time between hospitalization and the execution of the will at that time gives rise to an inference that the proponents unduly influenced testator to make a will in their favor. We must respectfully disagree with the contestant's assertions.

## TESTAMENTARY CAPACITY

In *In re Estate of Elam*, 738 S.W.2d 169 (Tenn.1987) the Supreme Court said:

> The law requires that the testator's mind, at the time the will is executed, must be sufficiently sound to enable him or her to know and understand the force and consequence of the act of making the will. *American Trust & Banking Co. v. Williams*, 32 Tenn.App. 592, 225 S.W.2d 79, 83 (1948). The testator must have an intelligent consciousness of the nature and effect of the act, a knowledge of the property possessed and an understanding of the disposition to be made. *Goodall v. Crawford*, 611 S.W.2d 602, 604 (Tenn.App. 1981). While evidence regarding factors such as physical weakness or disease, old age, blunt perception or failing mind and memory is admissible on the issue of testamentary capacity, it is not conclusive and the testator is not thereby rendered incompetent if her mind is sufficiently sound to enable her to know and understand what she is doing. *American Trust, supra;* 79 Am.Jur.2d *Wills* § 77 (1975).

738 S.W.2d at 171–72.

■ Mere opinions of lay witnesses concerning the soundness of mind of the testator are not evidence; but, having detailed the conversation, appearance, conduct, or other particular fact from which the testator's state of mind may be judged, non expert witnesses may state their conclusion or opinion. It is the facts detailed, and the conduct described which constitute evidence. *American Trust & Banking Co. v. Williams*, 32 Tenn.App. 592, 225 S.W.2d 79 (1948).

In *Melody v. Hamblin*, 21 Tenn.App. 687, 115 S.W.2d 237 (1937), Judge Felts, speaking for the court stated:

> While nonprofessional or lay witnesses, after stating the facts on which their opinions as to the testator's sanity or insanity are founded, are allowed to give such opinions in evidence, these opinions themselves, apart from the facts and circumstances on which they are based, are not evidence; and a verdict may be directed in favor of the will even where such witnesses have testified that in their opinion the testator was of unsound mind, unless facts and circumstances have been put in evidence which are sufficient to warrant the inference or conclusion that the testator was not of sound mind. *Fitch v. American Trust Co.*, 4 Tenn.App. 87, 95, 101, 102, and cases there cited.

115 S.W.2d at 242–43.

■ Contestant's proof concerning testator's testamentary capacity is that testator was gravely ill, in a weakened physical condition and on occasion subsequent to the execution of the Will was asleep or unconscious. There is no proof, however, that testator was not mentally competent. In our opinion his reminiscing about the past is not persuasive that he lacked his mental faculties.

> A man may freely make his testament, how old soever he may be, for it is not the integrity of the *body*, but of the *mind*, that is requisite in testaments. Swinb., part 2, § 5.
>
> The law looks only to the competency of the understanding: and neither age, nor sickness, nor extreme distress, or debility of body will affect the capacity to make a will, if sufficient intelligence remains. *Van Alst v. Hunter*, 5 Johns.C.R., 148.

*Nailing v. Nailing*, 34 Tenn. (2 Sneed) 630, 634 (1855).

Further in *American Trust & Banking Co. v. Williams*, 32 Tenn.App. 592, 225 S.W.2d 79 (1948) the court said:

> "Where a testator's sickness is wholly physical, proof of his condition as to lethargy, suffering, or unconsciousness on days preceding or following the execution of the

will is entitled to very little consideration." 57 Am.Jur. 127, Wills, Section 135.

" 'The will permits of such prior and subsequent incapacity to be given, but unless it bears upon that period, and is of such a nature as to show the incompetency when the will was executed, it amounts to nothing.' Wigmore on Evidence, section 233, pages 291–292". *Bridges v. Agee*, supra, 15 Tenn.App. [351] at page 355 [1932].

Evidence of prior mental condition may have much, little or no probative value depending upon the nature and effect of the malady, whether general, habitual, continuous, chronic or progressive or due merely to temporary, superficial, accidental, occasional or intermittent causes or conditions. If the debility falls within the first category, evidence of the testator's condition at a time other than the date of the execution of the will may shift the burden of proof and require the production of affirmative proof of his condition at the very time the will was executed.

225 S.W.2d at 84.

■ The right of a contestant to have the issue of mental capacity submitted to a jury in a will contest must rest upon substantial or material evidence at the time the will was made and not upon a "scintilla" or "glimmer" of evidence. *Hammond v. Union Planters Nat'l Bank*, 189 Tenn. 93, 222 S.W.2d 377 (1949).

We conclude from our review of the record that the trial court erred in submitting the issue of testamentary capacity to the jury.

**UNDUE INFLUENCE**

■ Undue influence invalidating a will must be such as destroys the free agency of the testator to the extent that the will, though nominally his or her own, is in reality that of another. *Crain v. Brown*, 823 S.W.2d 187 (Tenn.App.1991).

Undue influence may be proved directly by testimony showing that one person, by threats or coercion or importunities, so exhausted the will of the other person to resist that the act taken by the weaker was not his or her own act but that of the person exercising the undue influence.

\* \* \* \* \* \*

Undue influence may also be presumed from a confidential relationship.

*Matter of Estate of Depriest*, 733 S.W.2d 74, 78 (Tenn.App.1986).

■ In the case at bar there is absolutely no proof in the record concerning threats, coercion or importunities on the part of the Lindsays and contestant relies on the presumption of undue influence by virtue of a confidential relationship. A confidential relationship is "that relationship where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with the ability, because of that confidence, to influence and exercise dominion over the weaker or dominated party." *Iacometti v. Frassinelli*, 494 S.W.2d 496, 499 (Tenn.App.1973).

■ A normal relationship between a mentally competent parent and an adult child is not per se a confidential relationship and it raises no presumption of invalidity of the transaction. *Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn.1977).

■ In the case at bar there is no proof that the Lindsays were involved in any way with the testator's business and financial affairs. The proof merely consisted of the fact that testator's daughter, Mrs. Lindsay, had cooked testator's meals and generally exercised some overseeing of his household for many years prior to the date of his death, and that after being hospitalized initially he was discharged and was residing in Mrs. Lindsay's home when the Will was executed. He admittedly was physically ill, but as heretofore noted he had possession of his mental faculties and had traditionally been a strong-willed and opinionated person who was not easily dominated. It appears to be questionable whether there was a confidential relationship in this case. In any event, the proof is clear and uncontradicted that the testator obtained an attorney and conferred with the attorney concerning his property and the disposition of the estate. The presumption of invalidity emanating from the confidential relationship is rebuttable by clear and con-

vincing evidence of fairness. Proof that the testator received independent advice concerning his disposition is proof of fairness. *See Richmond v. Christian,* 555 S.W.2d 105 (Tenn.1977).

In *Solari v. Albertine,* 29 Tenn.App. 61, 193 S.W.2d 111 (1945) the basis of the will contest was the undue influence of the devisee. In affirming the judgment sustaining the validity of the will, the court said:

> There is no proof that Mary Albertine had anything to do with the preparation or execution of the will and in the absence of such proof the burden of disproving undue influence is not upon her.

> In the brief of the proponent we are cited to the rule as stated in 154 A.L.R. p. 583, in which the annotator says:

> "The later cases support the general rule stated in the earlier annotation on this subject, that the mere existence of confidential or fiduciary relations between a testator and a beneficiary under his will does not give rise to a presumption that the beneficiary exerted undue influence on the testator, in the absence of a showing of some activity on the part of the beneficiary in connection with the preparation of or execution of the will."

> And so in the instant case the mere opportunity afforded by the relations between Mary Albertine and the testator raises no presumption of the exercise of undue influence in the absence of a showing that she had some active part in the preparation or execution of the will. There is no such showing. The showing is that Mary telephoned Mr. Randolph, at the direction of her grandmother, that she wanted to see him. Mr. Randolph's testimony is that Mary telephoned him, but that she was not present at the preparation or execution of the will.

193 S.W.2d at 117.

In the case before us the proof is uncontradicted that proponents had nothing to do with the preparation and execution of testator's will.

There simply was not sufficient proof to submit the issue of undue influence to the jury. Accordingly, the judgment of the trial court is vacated. This case is remanded to the trial court for entry of a judgment sustaining the validity of the Will. The costs of appeal are assessed against appellee.

TOMLIN and HIGHERS, JJ., concur.