## IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **IN RE: ESTATE OF J. B. WARREN**, **DECEASED**. | ) ) ) ) ) ) | Haywood County Chancery Court No. P-1160 <br><br> C.A. No. 02A01-9806-CH-00156 |

FILED

April 6, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

_____

From the Chancery Court of Haywood County at Brownsville.
**Honorable George R. Ellis, Chancellor**

**C. Thomas Hooper, III**, Brownsville, Tennessee
Attorney for Respondent/Appellant Anita LeCornu.

**L. L. Harrell, Jr.**, HARRELL & HARRELL, Trenton, Tennessee
Attorney for Petitioner/Appellee Paul T. Warren.

OPINION FILED:

**VACATED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Respondent Anita W. Goode LeCornu (Respondent) appeals the trial court's judgment admitting to probate the will of J. B. Warren, Jr. (Testator). We vacate the trial court's judgment based upon our conclusion that the court erred in ruling that the Testator did not effectively revoke one of the will's provisions.

These proceedings began in November 1997, when the Respondent's brother, Petitioner Paul T. Warren (Executor), sought to probate the will of the parties' father, the Testator, who had died earlier that month. The Executor subsequently filed a second petition seeking instructions and an interpretation of the Testator's will. The second petition alleged that someone had made certain markings on the Testator's will and that a dispute had arisen as to whether the markings constituted a revocation of a portion of the will. The Executor took the position that the markings had no effect upon the will. The Respondent, however, maintained that the markings effectively revoked a portion of the will.

The Executor and the Respondent were the only living beneficiaries under the will submitted for probate. The will devised to the Respondent the Testator's "homeplace consisting of two lots 1-1/2 acres in District 4, Haywood County, Tennessee, to be hers in fee simple and absolutely." The will devised to the Executor "a house and lot located at Cherokee Landing Tennessee River in Decatur County, Tennessee." In addition, the will bequeathed to the Executor all of the Testator's "stocks, bonds and cash including all funds in [his] account at J. C. Bradford." This last bequest, however, had been underlined and enclosed in two sets of parentheses. Above the provision appeared the word "void," the initials "J.B.Jr.," and an additional word which was illegible. The will's residuary clause devised and bequeathed the remainder of the Testator's property to both the Executor and the Respondent.

At trial, the Executor testified that the Testator's health began to decline when he suffered a stroke in 1987. According to the Executor, the Testator's decline in health escalated, both physically and mentally, after the death of his wife in 1991. The Testator entered a nursing home in 1993 and remained there until his death at the age of 76. The Executor previously had viewed the Testator's will in 1991. The Executor testified that, at that time, the Testator's will contained no markings. The Executor did not see the Testator's will again until after his death in 1997, at which

time he noticed the markings on the will. The Executor also testified that the writing and the initials which now appeared on the Testator's will did not look like those of the Testator.

In contrast, the Respondent testified that the initials appearing on the will were those of the Testator. Although the Respondent had visited the Testator only once since 1991, she claimed to recognize his signature "[f]rom years of seeing him write it." According to the Respondent, she examined a copy of the will with a magnifying glass and determined that the illegible word written on the document was "July 6." The Respondent disputed the Executor's description of the Testator's mental health after his stroke in 1987. The Respondent testified that, despite his stroke, the Testator continued to sign checks and discuss detailed financial matters with his wife until her death in 1991.

The only trial witness who was not a party was the parties' cousin, Becky Taliaferro. Taliaferro testified that, after the Testator's stroke in 1987, "mentally he was still full of life." The Testator often visited Taliaferro in the tax office where she worked so that he could sign checks and tax documents. Taliaferro began to handle the Testator's financial affairs shortly after his wife's death in 1991, and she continued to do so until the Testator's death in 1997. According to Taliaferro, she and the Testator had extensive discussions concerning to whom the Testator wanted to entrust his financial affairs. Taliaferro and the Testator discussed the pros and cons of granting a power of attorney to various persons for this purpose, including the Executor and the Testator's brother. The Testator rejected the Executor because he "really wasn't too good at handling his own finances." Ultimately, the Testator chose Taliaferro, and he entrusted her with his checkbook and his daily financial affairs. The Testator continued, however, to be actively involved in his financial affairs. He periodically called Taliaferro when he had questions about his finances. Taliaferro acknowledged that the Testator suffered a decline in his mental abilities over the years, but she stated that this decline occurred gradually and did not happen suddenly as a result of the stroke in 1987.

Taliaferro further testified that she remembered viewing a copy of the Testator's will with the Executor in 1991. At that time, Taliaferro observed that a line had been drawn on the will. Taliaferro did not examine the document more closely, however, because she felt uncomfortable, as if she were invading the Testator's privacy. Taliaferro testified that the initials appearing on the will were "definitely" those of the Testator. Taliaferro had "[n]o doubt" that the Testator had signed his initials near the word "void." The Testator always signed his initials as "J.B.Jr.," and not as

"J.B.W." as might be expected.

At the trial's conclusion, the trial court found that the Testator had made the markings on the will. Nevertheless, the court ruled that the markings did not constitute an effective revocation of the bequest to the Executor. Accordingly, the trial court entered a judgment admitting the Testator's will to probate "without any revocations, modifications, or amendments thereto."

On appeal, the Respondent contends that the trial court erred in ruling that the markings made by the Testator were ineffective to revoke the will's provision bequeathing to the Executor all of the Testator's stocks, bonds, and cash. We agree with this contention.

Tennessee's probate code provides that a will, or any part thereof, is revoked by, *inter alia*,

> Being burned, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in the testator's presence and by the testator's direction.

T.C.A. § 32-1-201(3) (Supp. 1997).

Although our research of Tennessee case law revealed no decisions interpreting this specific statute, this court previously has addressed the question of what constitutes a valid revocation of a will provision. In *In re Estate of Dye*, 565 S.W.2d 219, 220 (Tenn. App. 1977), the testatrix had lined through a provision of her will dealing with the devise of realty. The testatrix also had written the word "void" over the provision. *In re Estate of Dye*, 565 S.W.2d at 220. In considering whether these alterations were sufficient to revoke the will's realty provision, this court stated:

> Although there does not seem to be any authority in Tennessee squarely holding that revocation of a will in part by

physical act is possible, indications are that this is the law.[1]  *See* 1 R. Pritchard, *Law of Wills*, § 270 (3d ed. 1955).  For a revocation to be valid, concurrence of an intention to revoke and some act by the testator manifesting that intention is required.  *Donnelly v. Hendrix*, 49 Tenn. App. 361, 355 S.W.2d 116 (1960); *Parker v. West*, 29 Tenn. App. 642, 199 S.W.2d 928 (1946).  As with most will problems, the testator's intent is thus the key.

*In re Estate of Dye*, 565 S.W.2d at 221.  This court then concluded that the testatrix's act of lining through the provision and writing the word "void" over it constituted an effective revocation of the provision.  The court reasoned that

> [t]his unequivocal act of cancellation of the realty clause necessarily is *prima facie* proof of a valid revocation by testatrix, which we do not think can be said to have been overcome by evidence of a contrary intent in the instant circumstances.
>
> The evidence in this case, aside from the fact of cancellation itself, simply fails to show intent clearly and to rebut the strong inference of intent to revoke raised by the cancellation.

*In re Estate of Dye*, 565 S.W.2d at 221.

We believe that the disposition of the present appeal is controlled by *In re Estate of Dye*.  Contrary to the trial court's ruling in this case, we conclude that the will alterations made by the Testator were effective to revoke the provision bequeathing his stocks, bonds, and cash to the Executor.  The Testator underlined this provision and enclosed it in two sets of parentheses.  The Testator also wrote the word "void" above the provision and signed his initials.  In accordance with *In re Estate of Dye*, we conclude that this unequivocal act of cancellation of the provision constituted *prima facie* proof of a valid revocation by the Testator.  Moreover, the other evidence in this case did not rebut the strong inference of intent to revoke raised by the cancellation.

When a will provision is validly revoked, the property referred to therein passes under the will's residuary clause in the absence of a contrary intent.  *See* 1 Jack W. Robinson, Sr., & Jeff Mobley, *Pritchard on the Law of Wills and Administration of Estates* § 283, at 448 & n.28 (5th

---

[1] *In re Estate of Dye* was decided prior to the enactment of T.C.A. § 32-1-201(3).  *See* 1985 Tenn. Pub. Acts 139.

ed. 1994) (and authorities cited therein). In the present case, the provision at issue referred to the Testator's stocks, bonds, and cash, including all funds in his account at J. C. Bradford. In light of our conclusion that the subject provision was validly revoked by the Testator, we hold that this property passes to both parties under the residuary clause of the Testator's will.

In urging this court to affirm the trial court's judgment, the Executor suggests that the markings on the Testator's will were made by someone other than the Testator. As stated previously, the trial court found that the Testator had made the markings on the will. This finding is presumed to be correct unless the preponderance of the evidence is otherwise. Rule 13(d) T.R.A.P. We conclude that the evidence does not preponderate against this finding of fact.

Alternatively, the Executor suggests that the Testator did not have the requisite testamentary capacity to revoke the will provision. The trial court's comments made at the trial's conclusion, however, indicated that the court placed significant weight on the testimony of the parties' cousin, Becky Taliaferro. The trial court has the opportunity to observe the manner and demeanor of the witnesses while testifying. Findings of fact dependent upon the credibility of witnesses are accorded great weight on appeal. *Town of Alamo v. Forcum-James Co.*, 327 S.W.2d 47 (Tenn. 1959); *Sisk v. Valley Forge Ins. Co.*, 640 S.W.2d 844 (Tenn. App. 1982). Taliaferro's testimony indicated that the line was drawn on the will sometime prior to 1991 and that the initials appearing by the word "void" were those of the Testator. Her testimony further indicated that, although the Testator suffered a stroke in 1987, turned over his financial affairs to Taliaferro in 1991, and thereafter experienced a gradual decline in health, the Testator still knew and understood the force and consequences of his acts when he altered his will. *See In re Estate of Elam*, 738 S.W.2d 169, 171-72 (Tenn. 1987); *In re Estate of Keasler*, 973 S.W.2d 213, 217-19 (Tenn. App. 1997); *In re Estate of Oakley*, 936 S.W.2d 259, 260-61 (Tenn. App. 1996); *Bills v. Lindsay*, 909 S.W.2d 434, 439-40 (Tenn. App. 1993); *Green v. Higdon*, 870 S.W.2d 513, 522 (Tenn. App. 1993). Accordingly, we decline to affirm the trial court's judgment on either of these bases.

The trial court's judgment is vacated, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Executor, for which execution may issue if necessary.

_____
FARMER, J.


_____
CRAWFORD, P.J., W.S. (Concurs)


_____
HIGHERS, J. (Concurs)