IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
OCTOBER 15, 2002 Session

## ROBERT JACKSON STEPHENSON v. MARY FRANCES STEPHENSON

**Direct Appeal from the Probate Division of the General Sessions Court for Madison County**
**No. 97-11039      Christy R. Little, Judge**

_____

### No. W2002-01064-COA-R3-CV - Filed March 27, 2003
_____

This appeal involves a will contest. The trial court found the testator to be competent at the time the will was executed and held that the will was the "complete, whole, true and valid Last Will and Testament" of the testator. For the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Probate Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

L. L. Harrell, Jr., Trenton, TN, for Appellant

John Van den Bosch, Jr., Jackson, TN, for Appellee

### OPINION

### Facts and Procedural History

Randle Phillip Stephenson ("Mr. Stephenson") died on February 3, 1997, leaving a document dated April 2, 1996 purporting to be his Last Will and Testament. This will was probated in the General Sessions Court of Madison County, Tennessee, Division II, Probate Division on February 13, 1997. The will left all of Mr. Stephenson's property to his mother, Mary Frances Stephenson ("Mrs. Stephenson"). Mrs. Stephenson was also appointed as Executrix of the Estate.

On March 17, 1997, one of Mr. Stephenson's sons, Robert Jackson Stephenson ("Jackie") filed a Complaint to Contest Will, alleging that Mr. Stephenson was incompetent at the time the will was executed. Specifically, Jackie alleged that Mr. Stephenson was "in such a physical and mental state and so heavily sedated at the time of signing of this Will that he was unaware of the nature of the instrument that he was signing," that he had no awareness of his possessions, and that he was

"unaware of the disposition that he was making of his property." Jackie also questioned the validity of Mr. Stephenson's signature on the will and alleged that the will was the product of undue influence exerted by Mrs. Stephenson. Mrs. Stephenson filed her answer on April 9, 1997 and the cause was heard by the Honorable Christy Little on November 8, 2001.

On April 2, 1996, the date the will was executed, Mr. Stephenson was in Regional Hospital in Jackson, Tennessee. The parties do not dispute that Mr. Stephenson had multiple heath concerns. The parties, however, disagree as to whether Mr. Stephenson was on a ventilator at the date and time in question and whether Mr. Stephenson had the capacity to execute a valid will.

According to Mrs. Stephenson, on April 2, 1996, she, along with Barbara Mowery ("Nurse Mowery"), Mr. Stephenson's nurse; Randy Stephenson ("Randy"), one of Mr. Stephenson's sons; Mrs. Helen Whitmire ("Ms. Whitmire"), Mrs. Stephenson's sister; and a notary public met in Mr. Stephenson's hospital room. The purpose of the meeting was to execute the will. Mrs. Stephenson alleges that she read the will to Mr. Stephenson on two different occasions and that Mr. Stephenson stated "that's what I wanted." She further alleges that Mr. Stephenson was alert and was not on a ventilator at the time the will was executed. According to Mrs. Stephenson, the will was then signed by Mr. Stephenson in the presence of the witnesses and that the witnesses signed in his presence and in the presence of each other. In support of her allegation, she offered her own testimony as well as the testimony of Randy, Nurse Mowery, and Ms. Whitmire.

Jackie claims that while visiting Mr. Stephenson on April 1, 1996, Mr. Stephenson was unresponsive and hooked up to various equipment. Jackie claims that when he returned on April 2nd, Mr. Stephenson was in the same condition he had been in the previous day. Testimony was presented by Dr. Taylor, one of Mr. Stephenson's doctors, that on April 1st and 2nd Mr. Stephenson was restrained and on a ventilator. Jackie also alleges that he asked Mr. Stephenson on multiple occasions whether he had made a new will. Mr. Stephenson told Jackie that he knew nothing of a new will.

At the conclusion of the evidence, the court took the matter under advisement. The court announced its findings by letter dated November 30, 2001 and filed December 3, 2001. The trial court found that Mr. Stephenson was competent, alert and conscious at the time the will was executed and that he was not on a ventilator. The court further found that Mr. Stephenson was "aware of the nature of the instrument that he was signing and disposition of his assets" and that the will was signed at the request of Mr. Stephenson and "not by any undue influence made by his mother, Mary Frances Stephenson." Finally, the court noted that because the will had been produced and admitted to probate and formal execution had been established, the burden of proof was on Jackie. Based upon the testimony, exhibits, and the record as a whole, the court concluded that Jackie did not meet his burden. An order was prepared and entered on December 18, 2001 embodying the decision of the trial court. Jackie timely filed his notice of appeal and raises the following issue for our review.

**Issue**

1.	Whether the trial court erred in finding that Randle Phillip Stephenson was mentally competent on April 2, 1996 to execute the will in controversy and whether the same was done with the intention of making his last will and testament.

**Standard of Review**

The findings of fact made by a trial court are given a presumption of correctness that will not be overturned unless the evidence preponderates against those findings. See TENN. R. APP. P. 13(d); see also Bank/First Citizens v. Citizens and Assoc., 82 S.W.3d 259, 262 (Tenn. 2002). A trial court's ruling on a matter of law, however, will be reviewed "'under a pure *de novo* standard . . . according no deference to the conclusions of law made by the lower court[].'" Bank/First Citizens, 82 S.W.3d at 727 (quoting Southern Constructors, Inc. v. Loudon County Bd. of Educ., 58 S.W.3d 706, 710 (Tenn. 2001)). The presumption of correctness afforded the trial court's findings of fact is particularly important where the court is called upon to resolve conflicting testimony based upon the court's evaluation of the witnesses' credibility. Clark v. Perry, No. 02A01-9704-CH-00080, 1998 Tenn. App. LEXIS 194, at *12-13 (Tenn. Ct. App. Mar. 19, 1998). This Court has previously stated:

> Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances. Where the issue for decision depends on the determination of credibility of witnesses, the trial court is the best judge of the credibility and its findings of credibility are entitled to great weight. This is true because the trial court alone has the opportunity to observe the appearance and demeanor of the witnesses.

Id. at *13-14 (citing Ivey v. McAlexander, No. 02 A01-9210-CH-00287, 1993 Tenn. App. LEXIS 578, at *16 (Tenn. Ct. App. Sept. 1, 1993) (citing Tenn-Tex Properties v. Brownell-Electro, Inc., 778 S.W.2d 423 (Tenn. 1989))).

**Law and Analysis**

The only issue presented for review relates to the testamentary capacity of Mr. Stephenson on the date the will was executed. This Court in American Trust & Banking Co. v. Williams well stated the "standard of competency, when that competency must be fixed in relation to the will, the relevant time frame for proof as to capacity, general evidentiary considerations and the weight to be given lay opinion testimony regarding competency." Harper v. Watkins, 670 S.W.2d 611, 628 (Tenn. Ct. App. 1983). This Court stated:

> The law fixes the standard of mental capacity and requires that a testator's mind, at the time the will was executed, must be sufficiently sound to enable him to know and understand the force and consequence of his act. He is not rendered incapable of making a will by mere physical weakness or disease, old age, blunt perception, or

failing mind and memory, if his mind is sufficiently sound to enable him to know and understand what he is doing. Smith v. Harrison, 49 Tenn. 230; Nailing v. Nailing, 34 Tenn. 630; Fitch v. American Trust Co., Adm'r, 4 Tenn. App. 87; Bridges v. Agee, 15 Tenn. App. 351, 355; Melody v. Hamblin, 21 Tenn. App. 687, 695, 115 S.W.2d 237; Rogers v. Hickam, Tenn. App., 208 S.W.2d 34; Cude v. Culbertson, Tenn. App., 209 S.W.2d 506, 507; Farmers Union Bank v. Johnson, 27 Tenn. App. 342, 354, 181 S.W.2d 369.

In determining testamentary capacity, the mental condition of the testator at the very time of executing the will is the only point of inquiry; but evidence of mental condition both before and after making the will, if not too remote in point of time, may be received as bearing upon that question. In so far as it has a reasonable tendency to bear upon the mental capacity of the testator when the will was executed, evidence of his physical condition both before and after the date of the will is also admissible. But, apart from its effect upon the mind, the physical condition of the testator has no bearing on the issue. See, generally, cases cited supra.

"Where a testator's sickness is wholly physical, proof of his condition as to lethargy, suffering, or unconsciousness on days preceding or following the execution of the will is entitled to very little consideration." 57 Am.Jur. 127, Wills, Section 135.

"The will permits of such prior and subsequent incapacity to be given, but unless it bears upon that period, and is of such a nature as to show the incompetency when the will was executed, it amounts to nothing.' Wigmore on Evidence, section 233, pages 291-292'. Bridges v. Agee, supra, 15 Tenn. App. at page 355.

. . . .

It is a familiar rule that the mere opinions of lay witnesses as to soundness of mind are not evidence; but, having detailed the conversation, appearance, conduct or other particular fact from which the state of mind may be judged, non-expert witnesses may state their conclusion or opinion. It is the facts detailed, the conduct described which constitute evidence. Fitch v. American Trust Co., 4 Tenn. App. 87, 101; Melody v. Hamblin et al., 21 Tenn. App. 687, 695, 115 S.W.2d 237, 243. As said by Judge Felts in the latter case: ". . . a verdict may be directed in favor of the will even where such witnesses have testified that in their opinion the testator was of unsound mind, unless facts and circumstances have been put in evidence which are sufficient to warrant the inference or conclusion that the testator was not of sound mind."

In Rogers v. Hickam, Tenn. App., 208 S.W.2d 34, cited supra, the opinion of lay witnesses that the testator was of unsound mind, based upon their statements that

before the will was executed he failed to recognize the witnesses, a daughter and her husband, that he stared and looked wild, and other circumstances detailed in the opinion, as against positive testimony that his mind was sound at the very time the will was executed, was held insufficient to support a verdict against the will. A verdict was directed for the will in that case and in Fitch v. American Trust Company, supra, because the court determined as a matter of law that the facts and conditions related afforded no reasonable basis for the verdict.

American Trust & Banking Co. v. Williams, 225 S.W.2d 79, 83 - 84 (Tenn. Ct. App.1948).

**Proof Offered by the Contestants**

In support of his allegation that Mr. Stephenson did not possess testamentary capacity on April 2, 1996, Jackie offered his own testimony as well as the testimony of Dr. Jackie Taylor ("Dr. Taylor"), Dr. K. R. Chary ("Dr. Chary") and Lois Stephenson ("Lois"), Mr. Stephenson's ex-wife. Lois testified that she went to visit Mr. Stephenson in the hospital on April 1, 1996 and that he was unresponsive and hooked up to "all kinds of equipment." On cross-examination, Lois testified that she did not see Mr. Stephenson on April 2, 1996 and that her opinion that Mr. Stephenson was incapable of making a will on April 2, 1996 was based on the doctor's reports and on her observation of his condition on April 1, 1996.

Jackie testified that he went to visit Mr. Stephenson on March 30, 1996 and that he was restrained and "wasn't himself" Jackie further testified that on March 31, 1996 he signed papers that allowed the hospital to put Mr. Stephenson on life support, but that Mrs. Stephenson and Randy would not sign them. Jackie stated that when he saw Mr. Stephenson on March 31st, he made no response to his company, his eyes were closed and he was hooked up to all kinds of machines, including something in his mouth to help him breathe. Jackie again visited Mr. Stephenson on April 1, 1996 and testified that he was the "same as the 31st, no response." Jackie testified that he went to visit Mr. Stephenson on April 2, 1996 sometime after 5:00 p.m. and that there was no change in Mr. Stephenson from the night before and that he still had "all those machines hooked up. Whatever the apparatus was, was in his mouth." Jackie stated that he noticed a change in Mr. Stephenson's condition a few days after April 2, 1996. Sometime after Mr. Stephenson's condition improved, Jackie asked Mr. Stephenson if he had made another will while in the hospital, to which he replied no. Jackie testified that he again discussed this other will with Mr. Stephenson and that he responded that there was no other will.

On cross-examination, Jackie testified that Mrs. Stephenson was Mr. Stephenson's primary caregiver. Jackie also testified that his opinion that Mr. Stephenson did not have testamentary capacity on April 2, 1996 was based on his own observations and the medical records. He also stated that the nurse and doctors would be in the best position to assess Mr. Stephenson's condition.

Finally, Jackie offered the testimony of Dr. Taylor and Dr. Chary, two of Mr. Stephenson's doctors at Regional Hospital. The testimony of both doctors was presented to the court in the form of depositions. Dr. Taylor testified that he is a family physician practicing in Jackson, Tennessee and that he was Mr. Stephenson's primary treating physician. He further testified that Mr. Stephenson was a very sick man, suffering from severe diabetes, heart disease and renal failure. As

part of his treatment, Mr. Stephenson required IV fluids, IV pressure agents, dialysis, and a ventilator. Dr. Taylor testified that Mr. Stephenson was placed on the ventilator on March 31, 1996 and continued to be on the ventilator through April 3, 1996. Dr. Taylor further testified that while a patient is on a ventilator, he or she is unable to talk.

As to Mr. Stephenson's mental status, Dr. Taylor testified that Mr. Stephenson was alert and oriented upon his admission to the hospital, but that his overall condition declined rapidly. Dr. Taylor stated that his partner, Dr. Hayden, examined Mr. Stephenson on March 31, 1996 at 7:40 a.m. and he reported that Mr. Stephenson was "confused and he had deteriorating mental status." Dr. Taylor testified that on April 1, 1996, Mr. Stephenson was on dialysis, a ventilator, and was receiving Ditropan to help control body movements. Dr. Taylor further testified that he had made no statement as to Mr. Stephenson's mental status.

Dr. Taylor testified that he saw Mr. Stephenson at 8:30 a.m. on April 2, 1996 and that he was more responsive, but that he was still on the ventilator, in restraints and on Ditropan. As to Mr. Stephenson's condition on April 3, 1996, Dr. Taylor testified that there was no change from the day before.

On cross-examination, Dr. Taylor testified that he, at no time, performed any tests to assess Mr. Stephenson's mental abilities. When asked whether the attending nurse would be the most likely person to know whether Mr. Stephenson was alert and communicating, Dr. Taylor stated "yes, that would be a good resource simply because they're there so much of the time." Dr. Taylor further stated that the doctors are "in and out for a limited amount of time" and that the nurse is there "pretty much 24 hours a day." When asked whether he would quarrel with Mr. Stephenson's nurse's assessment of his mental alertness on April 2, 1996 at the time the will was signed, he responded " I would respect her opinion and certainly take [sic] into consideration." Dr. Taylor also stated that he could not conclusively say that Mr. Stephenson did not have the mental capacity to execute his will on April 2, 1996.

Dr. Chary testified that he is a physician specializing in nephrology and that he attended to Mr. Stephenson while he was in Regional Hospital. Dr. Chary testified that he first saw Mr. Stephenson on March 29, 1996 and that he was alert, but chronically ill. Dr. Chary testified that his associate, Dr. Joglekar, saw Mr. Stephenson March 30, 1996 and that his notes revealed that Mr. Stephenson was "more confused, deteriorating mental status, itching more, blood pressure ----." Dr. Chary stated that he resumed care of Mr. Stephenson on April 1, 1996 and that Mr. Stephenson was on a ventilator at that time. Dr. Chary next saw Mr. Stephenson on April 2, 1996 at 9:00 a.m. Dr. Chary testified that Mr. Stephenson was "much more responsive," but still on the ventilator. Dr. Chary further testified that Mr. Stephenson was arousable, but "more lethargic and less responsive" on April 3, 1996. He also stated that Mr. Stephenson remained on the ventilator.

On cross-examination, Dr. Chary admitted that he did not have any independent recollection of Mr. Stephenson and that he was testifying solely from the records provided to him by Jackie's counsel. When asked whether the nurses are the ones closet to the patient, Dr. Chary responded "right." Dr. Chary was then asked whether the nurses "know better from a minute-to-minute and hour-to-hour basis what these people are capable of doing and how they are responding," to which he responded "that's true." Dr. Chary admitted that he was not present at the time the will was

executed and that "the mental status changes in the critically ill patient during the course of the day." He further stated that he would not question either an LPN or RN that says a patient was alert.

**Proof Offered by the Proponents**

In support of her claim that Mr. Stephenson had testamentary capacity at the date and time in question, Mrs. Stephenson offered her own testimony as well as the testimony of Nurse Mowery, Ms. Whitmire, Randy, and Joe Byrd ("Mr. Byrd"). Mrs. Stephenson testified that she, Randy and Ms. Whitmire went to the hospital at 9:00 a.m. on April 2, 1996 and that Mr. Stephenson greeted them and asked "[d]id you bring the will?" Mrs. Stephenson then asked Mr. Stephenson if he wanted her to read him the will, to which he responded "[w]ell, I know what is in it, but you can read it anyway." After Mrs. Stephenson read the will, Mr. Stephenson said "[w]ell, that's what I wanted." When Mrs. Stephenson asked him if he was sure, Mr. Stephenson stated "[o]h yes, that's what I want."

Shortly thereafter, Nurse Mowery came in to take Mr. Stephenson to dialysis. According to Mrs. Stephenson, Mr. Stephenson asked Nurse Mowery to witness his will and also asked for a notary. Mrs. Stephenson then testified that Mr. Stephenson signed the will in the presence of the witnesses and that the witnesses signed the will in his presence and in the presence of each other. Mrs. Stephenson also testified that Mr. Stephenson was not restrained nor was he on a ventilator at the time the will was executed.

On cross-examination, Mrs. Stephenson testified that she held a book under the will as Mr. Stephenson was signing it, but that no one assisted him in writing his name. Mrs. Stephenson also testified that Mr. Byrd brought the will to the hospital that morning.

Nurse Mowery testified that she is an LPN in Jackson, Tennessee and that she attended to Mr. Stephenson during his stay at Regional Hospital. Nurse Mowery testified that on the morning of April 2, 1996 she went into Mr. Stephenson's room to take him to dialysis and she was asked to witness the will of Mr. Stephenson. She further stated that she witnessed the will and that all the witnesses signed in the presence of each other and in Mr. Stephenson's presence and that Mr. Stephenson signed in the presence of the witnesses.

Nurse Mowery testified that Mr. Stephenson was "alert and oriented times three." Nurse Mowery explained that oriented times three meant that "[h]e knew himself, where he was, what day, what time. He was to himself." Nurse Mowery further stated that she checked the medication records and talked to Mr. Stephenson and believed that Mr. Stephenson "knew that that's what he wanted, what was in his will, that that's what he wanted." Nurse Mowery also testified that she had no reservations as to whether Mr. Stephenson was capable of doing what he wanted to do. Specifically, Nurse Mowery testified that she "was not uncomfortable about the will. He was to himself and he wasn't being pushed to do it." Finally, Nurse Mowery testified that Mr. Stephenson was not on a ventilator at that time.

Next, Ms. Whitmire testified that she is the sister of Mrs. Stephenson and the aunt of Mr. Stephenson. She also testified that she was a registered nurse from 1937 until her retirement. Ms. Whitmire testified that on April 2, 1996 at 9:00 a.m., she along with Mrs. Stephenson and Randy went to visit Mr. Stephenson. Ms. Whitmire stated that Mr. Stephenson seemed comfortable, had good color, was able to focus his eyes, was receiving nasal oxygen and was not on a ventilator. She

further testified that Mr. Stephenson "verbalized with an audible, natural, normal, audible sound" and that he asked Mrs. Stephenson if she had brought the will. Ms. Whitmire then testified that Mr. Stephenson signed the will in the presence of the witnesses and that the witnesses signed in his presence and in the presence of each other. Finally, Ms. Whitmire testified that Mr. Stephenson had no mental weakness that impaired his ability to do what he wanted to do.

On cross-examination, Ms. Whitmire testified that she was aware that the will was not notarized and she has no explanation as to why it was not notarized. She again stated that Mr. Stephenson was not on a ventilator at the time the will was signed, but admitted that it was possible that Mr. Stephenson could have been on a ventilator later in the day on April 2, 1996.

Randy testified that he is one of Mr. Stephenson's two sons and that he was present when the will was signed on April 2, 1996. He testified that Mr. Stephenson was "real bright" and that he knew everyone that came into his room. Randy stated that Mr. Stephenson signed the will in the presence of the witnesses and that the witnesses signed in the presence of each other and in Mr. Stephenson's presence. Randy further testified that Mr. Stephenson did not have help signing the will, other than Mrs. Stephenson holding the book under the will. Randy testified that Mr. Stephenson had air tubes through his nose, but was not aided by a ventilator.

The final witness on behalf of the proponents was Mr. Bryd who testified that he went to visit Mr. Stephenson sometime in April of 1996. He testified that Mr. Stephenson acknowledged him and spoke to him and that his voice was pretty weak On cross-examination, Mr. Byrd testified that he remembered taking a will to Mrs. Stephenson's home and not the hospital, but admitted that he could not remember for sure and that he could have taken it to the hospital.

After the trial court heard all the testimony and observed the witnesses, the court made the following findings of fact:

1. The Court finds that the decedent was competent at the time the Will was signed. This ruling is based upon the testimony of the individuals in the hospital room at the time of the signing with the most weight given to the testimony of Nurse Mowery. Ms. Mowery is an independent witness who stated that Mr. Stephenson was oriented times 3 and alert.

Further, Dr. Chary's testimony in his deposition, page 12, states that the patient is "much more responsive on April 2." Although his notes reflect that the patient was on a ventilator on April 2, the nurse advises that she was taking Mr. Stephenson down to the Dialysis Treatment Center. It appears that Mr. Stephenson was off and on the ventilator during his hospital stay. The Court does find that he was not on the ventilator at the time he signed the Will based on Ms. Mowery's testimony. In addition, Dr. Taylor stated in his deposition on page 15 that on April 2, "he was more responsive" and the nurses notes documented that he was following simple commands. Dr. Taylor also stated that the most likely person to know about the alertness of a patient would be the nurse who is with them 24 hours a day and not the doctor. He further stated that he would respect the nurse's opinion if she stated that Mr. Stephenson was mentally alert on April 2.

2. The Court finds that the deceased was alert and conscious at the time of the signing of the Will.

3. The Court further finds that from the testimony of the witnesses and the record, the decedent was not sedated at the time of the signing of the Will and that he was aware of the nature of the instrument that he was signing and disposition of his assets.

4. The Court further finds that it was at the request of the decedent that the Will was signed on that date and not by any undue influence made by his mother, Mary Frances Stephenson.

5. Since the Will had been produced and admitted to probate on February 13, 1997 and formal execution had been established, the burden of proof in this matter rests on the Plaintiff, Robert Jackson Stephenson, to contest this Will. Upon the record as a whole, the testimony of all witnesses and the exhibits presented at trial, the Court finds that the Plaintiff has failed to meet his burden of proof.

6. Attorney Van den Bosch is advised to draft an Order pursuant to the findings of the Court.

After a thorough review of the record, we find that the evidence supports the trial court's conclusions. The trial court heard all the testimony, observed the witnesses and made the above findings of fact. Where, as here, the issue presented "depends on the determination of credibility of witnesses, the trial court is the best judge of the credibility and its findings of credibility are entitled to great weight. This is true because the trial court alone has the opportunity to observe the appearance and demeanor of the witnesses." Clark v. Perry, No. 02A01-9704-CH-00080, 1998 Tenn. App. LEXIS 194, at *12-13 (Tenn. Ct. App. Mar. 19, 1998) (citations omitted). Therefore, we are of the opinion that the trial court committed no error and that the evidence does not preponderate against the trial court's decision.

## Conclusion

Accordingly, we affirm the trial court. Costs on appeal are taxed to the Appellant, Robert Jackson Stephenson, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

-9-