**Willie H. LASSETTER,**
**Plaintiff-Appellant,**

v.

**Eunice Inez HENSON, Executrix of the Estate of John C. Henson,**
**Defendant-Appellee.**

Court of Appeals of Tennessee,
Western Section,
Sitting at Knoxville.

July 6, 1979.

Certiorari Denied by Supreme Court
Aug. 27, 1979.

John K. Morgan, Hugh P. Garner, Morgan, Garner, Wood & Guthrie, Chattanooga, for plaintiff-appellant.

Raymond H. Moseley, Humphreys, Hutcheson & Moseley, Chattanooga, for defendant-appellee.

EWELL, Judge.

This is an appeal from a judgment, based on a jury's verdict, dismissing an action for personal injuries.

Willie H. Lassetter filed suit against Eunice Inez Henson, executrix of the estate of John C. Henson, for personal injuries received in an airplane crash on January 9, 1975. Lassetter was a guest passenger in the four passenger Piper aircraft owned and flown by John C. Henson at the time of the accident in which Henson was killed. Eunice Inez Henson, widow of John C. Henson, was duly qualified as executrix of his estate. Plaintiff charged that Henson negligently operated the aircraft in several particulars specified in the complaint and also relied upon the doctrine of res ipsa loquitur.

The defendant filed an answer denying negligence on the part of Henson in the operation of the aircraft and averring that the crash was caused by the malfunctioning of one or more of the instruments in the aircraft combined with the failure of the approach control operators at the Chattanooga Airport to properly advise Henson on his altitude during final approach procedures. The defendant also denied that the doctrine of res ipsa loquitur was applicable and insisted that Lassetter assumed the risk and was guilty of contributory negligence in sleeping when he knew an instrument approach was to be made.

On trial the jury returned a verdict in favor of the defendant, and judgment was entered dismissing plaintiff's suit.

Plaintiff has appealed assigning six errors of the Trial Court. In his first three assignments plaintiff insists that there was no evidence to support the verdict of the jury; that the verdict of the jury was contrary to the weight and preponderance of the evidence; and that the verdict was contrary to the law as charged by the Court and the evidence. We will address these three assignments jointly.

■ Where, as in this case, the appeal is from a judgment based on a jury's verdict, we do not weigh evidence nor pass upon credibility of witnesses, but determine only if there is any material evidence in the record which supports the verdict. In reviewing evidence, in order to safeguard the constitutional right of trial by jury, we are required to "take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict". *D. M. Rose & Co. v. Synder*, 185 Tenn. 499, 206 S.W.2d 897 (1947); *Kidd v. Dunn*, 499 S.W.2d 898 (Tenn.Ct.App.1973).

■ The proof in this case shows that John C. Henson was a volunteer associate probation officer with the Juvenile Court of Hamilton County fully licensed and qualified to fly the aircraft in question under the circumstances existing at the time of the crash. On January 9, 1975, he flew three of the employees of the Hamilton County Juvenile Court from Chattanooga to Memphis to meet with other juvenile personnel. In the plane with Henson were Willie Lassetter, the plaintiff; James W. Hammonds; and Minnie Lee West. After the meeting they left Memphis at approximately 4:30 p. m. Eastern Standard Time. The crash occurred at 6:36 p. m. Eastern Standard Time as the aircraft was approaching Lovell Field in Chattanooga to land on runway 20. The site of the crash was approximately 4.5 miles from the airport at a point where the safe minimum altitude was 1,560 feet. At an altitude of approximately 850 feet the aircraft struck the tops of trees.

The plane had been flown from Memphis to Chattanooga at an altitude of approximately 7,000 feet and had descended to lower altitudes at the direction of the air control tower at Lovell Field as it approached Chattanooga. The temperature at ground level at Lovell Field was 47 degrees Farenheit and at 7,000 feet would have been approximately 25 degrees. Because of fog and darkness it was impossible to see outside of the aircraft. The situation

was described by passenger Hammonds, witness for the plaintiff, as follows:

> There was no way to see anything outside of the cabin. It was as if you were flying with the windows painted black. You had no sensation of anything outside the cabin, only the vibration of the plane and the sound of the engine. So, you were not aware of any surroundings.

Henson was attempting what is commonly referred to as an "instrument landing". He was in radio contact with the air control tower at Lovell Field and was relying upon the instructions from Lovell Field as well as the instruments within the aircraft. Specifically, he was relying upon the altimeter in the aircraft to determine his altitude at any given point in time. Since the air control tower was not equipped to determine the altitude of the aircraft on radar and atmospheric conditions were such as to preclude visual observation, the altimeter was Henson's sole means of determining altitude. As Henson attempted to land, both passenger Hammonds, who was seated behind Henson, and passenger West, who was seated behind Lassetter, were awake and observed that which occurred within the aircraft. Lassetter, who was seated to the right of Henson, had gone to sleep shortly after departing Memphis and did not wake up until he was in the hospital.

There is no question but that the crash occurred because the aircraft was being flown at too low an altitude. The dominant issue litigated was whether the aircraft was being so flown as a result of the negligence of Henson, as insisted by the plaintiff, or because of a malfunctioning altimeter reflecting an erroneous altitude, as insisted by the defendant.

The plaintiff in his complaint relied upon the doctrine of *res ipsa loquitur* but also charged Henson with specific acts of negligence including the diverting of his attention from the operation of the aircraft and misreading and/or failing to read the instruments in the aircraft. The testimony of both passenger Hammonds and passenger West was received into evidence as a part of the plaintiff's proof, but plaintiff was unable to adduce any direct evidence of negligence on the part of Henson. One expert witness called by the plaintiff testified that in his opinion the crash occurred as a result of the negligence of Henson and not because of a malfunction of the altimeter. This evidence together with the circumstantial evidence of the crash of the aircraft while Henson was at the controls (*res ipsa loquitur*) constituted, in essence, plaintiff's case.

The defendant built her defense on the theory that the altimeter had malfunctioned misleading Henson into believing that the aircraft was at a substantially higher altitude than was actually the case. It was proven that any form of restriction in the static line which feeds the altimeter with outside static air pressure will cause it to have a significant lag in following the altitude in a descent. It was further proven that this particular aircraft was equipped with aluminum pitot tubes which are conducive to the condensation of water when the aircraft is flown from below freezing temperatures into above freezing temperatures. It was theorized that, as Henson brought the aircraft from an altitude of 7,000 feet, where the temperature was below freezing, to an altitude of less than 1,000 feet, where the temperature was above freezing, there was a condensation of water within the static line creating a restriction or partial blockage causing the altimeter to lag so that Henson, relying solely upon the altimeter, thought he was flying at a substantially higher altitude than was actually the case. This theory was advanced by three expert witnesses as being the cause of the crash rather than the negligence of Henson. It was also shown that if this in fact did occur Henson would have had no warning or reason to doubt or question the reliability of the altimeter.

The defendant was unable to produce any direct evidence that the altimeter malfunctioned, but each of the expert witnesses so expressed his opinion based upon an analysis of all available information. There was direct, uncontroverted proof to the effect that upon leaving Memphis all parties in

the aircraft discussed the anticipated inclement weather conditions which might prevail in Chattanooga upon their arrival and agreed that Henson would make one approach to land and, if unsuccessful, would fly to Nashville for the night. It was uncontroverted that following this conversation the plaintiff went to sleep and did not awaken before the crash.

The jury returned a general verdict for the defendant, and in our opinion there was material evidence in the record which supports the verdict. Therefore, the first three assignments of error are overruled.

■ In his fourth assignment of error plaintiff insists that the Trial Court erroneously instructed the jury on the doctrine of *res ipsa loquitur*. The relevant portion of the charge is as follows:

And there is—the Plaintiff in this case has sued under two different theories. What I have just sued—or charged you— is what is known as the theory of negligence. He has also sued under the theory which is called res ipsa loquitur. The Court will define that for you.

A statement of the doctrine of res ipsa loquitur is this: Where the thing causing the harm; that is, the airplane in this case, is shown to be under the management of the Defendant in this case, Mr. Henson, and the accident is such that in the ordinary course of things, does not happen, if those who have the management use proper care, it affords reasonable evidence in the absence of explanation by the Defendant that the accident arose from the want of care.

Now, the maxim of res ipsa loquitur means that the facts of the occurrence evidence negligence; that circumstances unexplained justify an inference of negligence.

This principal of proof applied, a case of res ipsa loquitur does not differ from an ordinary case of circumstantial evidence. Res ipsa loquitur is not an arbitrary rule, but rather a common sense appraisal of a probative finding of circumstantial evidence. A res ipsa loquitur case is a circumstantial evidence case

which permits the Jury to infer negligence from the mere occurrence of the accident itself. It warrants an inference of negligence, which the Jury may draw or you may not draw as your judgment dictates.

It raises a presumption of negligence which requires the Defendant to come forward to prove, to explain, or show, or to rebut the presumption.

Plaintiff insists that the foregoing was erroneous in that the Trial Court failed to instruct the jury that "should the defendant fail in coming forward to explain or show, or rebut the presumption of negligence, then the plaintiff has carried the burden of establishing negligence by virtue of the doctrine of res ipsa loquitur". However, he submitted no special request to this effect.

Under the circumstances of this case this assignment is theoretical only. More than a day of the trial was consumed by the defendant in the presentation of expert witnesses whose testimony was offered for the specific purpose of rebutting the presumption of negligence. It could not have been error for the Court to fail to charge the jury as to their duty in the event the defendant had failed so to do. Further, as stated hereafter in our discussion of the fifth assignment, we do not find that the Trial Court, in any event, should have charged the jury as insisted by plaintiff. Accordingly, the fourth assignment of error is overruled.

■ At the conclusion of the charge in chief the Trial Judge invited the respective attorneys to submit special requests. The attorney for the plaintiff presented none, and the attorney for the defendant offered two. Thereafter, further instructions were given to the jury as follows:

With regard to—this is in reference to the res ipsa loquitur doctrine. I think I explained this, but in case I didn't—with regard to the inference that the pilot of the plane was negligent merely because the crash occurred, you're not required to return a verdict for the Plaintiff merely because of such inference of negligence.

Rather you should weigh the evidence presented by this inference and you will have to decide whether it is sufficient for you to find that the Plaintiff has proved by the preponderance of evidence that the pilot of the aircraft was guilty of negligence; that is, whether the preponderance as such has shifted the burden of (sic:to) the Defendant to come forth and explain with reasonable certainty why this aircraft accident occurred.

Under this theory of negligence in this case that the Court has charged you about, regardless of any inference of negligence—when you're talking about a negligence action as opposed to res ipsa loquitur, you may draw from the facts. With regards to any inference of negligence drawn from the fact the airplane crashed, the burden of proof in this case is upon the Plaintiff. And I think that Mr. Garner sufficiently stated that for you at the beginning.

The burden of proof is not on the Defendant, and the Plaintiff must prove by a preponderance of the evidence that the pilot of the aircraft was guilty of negligence, in order to recover under the theory of negligence.

The theory of res ipsa loquitur, of course, is a circumstantial matter that raises the inference of negligence. Of course, you may decide that it does, or you may decide that it does not. If it does, of course, it imposes upon the Defendant the burden of explaining to you that the airplane crash was not the fault of the Defendant in this case.

Plaintiff in his fifth assignment insists that the foregoing was erroneous in that the jury was instructed to "weigh the evidence to determine if the plaintiff has proven by a preponderance of the evidence if the operator of the aircraft was guilty of negligence".

As had been previously noted, the plaintiff not only relied upon the doctrine of res ipsa loquitur but also alleged specific acts of negligence on the part of Henson, and the Trial Judge instructed the jury on both theories. The law with reference to the burden of proof under the doctrine of *res ipsa loquitur* was succinctly stated by Judge Matherne of this Court in the case of *Ford v. Roddy Manufacturing Company*, 60 Tenn. App. 495, 448 S.W.2d 433 (1969), as follows:

Where, as here, the res ipsa loquitur doctrine is applicable the burden of proof does not shift from plaintiff to the defendant, but the defendant is required to go forward with the explanatory evidence, and from all the evidence the trier of fact may or may not accept the inference as raised by the doctrine.

The rule applicable to the jury when a case is submitted under the doctrine is stated in *Sweeny v. Erving*, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815, as follows:

"In our opinion, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff."

See also *Kidd, supra* and *Scarbrough v. City of Lewisburg*, 504 S.W.2d 377 (Tenn.Ct.App. 1973).

Plaintiff is insisting, in effect, that under the doctrine of *res ipsa loquitur* the burden of proof is shifted to the defendant in this case and that the Trial Court should have so instructed the jury. We do not agree. Considering the charge as a whole we find no reversible error in the instructions given to the jury. The fifth assignment of error is overruled.

■ In his sixth assignment of error plaintiff contends that the Court erred by

placing undue influence on the doctrine of assumption of risk by the manner in which this defense was charged. The bill of exceptions shows that the charge to the jury was concluded at 10:25 a. m. following which a fifteen minute recess was declared. Thereafter, apparently during the recess, the jury was called back to the courtroom because the Judge failed to give instructions on defendant's theory of assumption of risk. A brief charge was given on this subject, the substance of which is not questioned by the plaintiff, and at 10:43 the jury retired to the jury room. Following some period of deliberation the jury returned to the courtroom to make inquiry of the Court concerning the defense of assumption of risk. There ensued a discourse between the Judge and the foreman of the jury, the substance of which is not questioned by the plaintiff, after which the jury returned to the jury room for further deliberation. Plaintiff insists that the untimely charge resulted in undue prominence being placed on the defense of assumption of risk and caused the jury to ignore the preponderance of the evidence.

While the preferred procedure would have been for the Court to complete the charge prior to the recess, from an examination of the entire record it does not affirmatively appear that the irregular manner in which the jury was charged affected the results of the trial. See T.C.A. § 27–117. This assignment is also overruled.

Although the fourth and fifth assignments of error relate to the doctrine of *res ipsa loquitur* and the sixth assignment relates to the doctrine of assumption of risk, the issues as to whether or not this is a proper case for the application of either of these doctrines were not raised on appeal. Also, this appeal did not present an issue as to the propriety of the Trial Judge's action in submitting the case to the jury on both the allegations of specific negligence and the doctrine of *res ipsa loquitur*. Since these issues are not before the Court, they have not been addressed in this opinion.

The judgment is affirmed and the costs of appeal are adjudged against the plaintiff and his sureties.

MATHERNE and NEARN, JJ., concur.