# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### AUGUST 28, 2000 Session

## JOSEPH L. ELCAN, ET AL. v. LINDA AUGUSTINE, ET AL.

### Direct Appeal from the Circuit Court for Tipton County
### No. P 1367 & 4768; The Honorable Joseph H. Walker, III, Judge

---

### No. W1999-01621-COA-R3-CV - Filed January 4, 2001

---

This appeal involves a will contest concerning the last will and testament of Frank Elcan. Contestants are, among others, the brother and half sister of the testator. The proponents of the will are Linda Augustine and Jimmy Elcan. The complaint alleges that a paper writing dated December 1, 1995, previously admitted to probate in common form is not the lawful will of the testator because he lacked testamentary capacity and because he was unduly influenced by Linda Augustine. The proponent's answer denies the material allegations of the complaint.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARME,R J., joined.

J. Thomas Caldwell, for the Appellants

T. D. Forrester, for the Appellees

### OPINION

### Facts and Procedural History

This is a will contest case involving a purported will dated December 1, 1995, and propounded as the last will and testament of Mr. Frank C. Elcan

In 1994, the condition of the Elcan home began to deteriorate rapidly. For example, dishes started piling up everywhere, there were maggots in the sink, spoiled food in the refrigerator, and feces on the carpets and bathroom floor. Mr. Elcan's person also became exceedingly dirty.

Mr. and Mrs. Elcan lived at home together. On October 9, 1995, Ms. Kate Dawson, Mr. Elcan's half sister, found Mrs. Elcan lying on the floor of the Elcan home with flies crawling all over her. The condition of the house was filthy. Ms. Dawson called 911, and Ms. Elcan was

hospitalized. The doctor who examined Mrs. Elcan testified that she had been poorly cared for and neglected. The doctor stated that Mrs. Elcan's condition would have taken weeks to months to develop and that 72 hours prior to her admission Mrs. Elcan's condition would have been considered life-threatening by most untrained observers. Furthermore, the doctor testified that any rational person who lived in the home with Mrs. Elcan would have recognized the seriousness of her condition.

As a result of the foregoing, Mr. Elcan was examined by Dr. Causey, a psychologist, on October 20, 1995. Dr. Causey found that Mr. Elcan was not aware of the time of day, did not know his name, became easily agitated, was not aware of his surroundings, and had no appreciation of his circumstances. Dr. Causey diagnosed Mr. Elcan as suffering from dementia. Dr. Causey filled out the proper admission papers and committed Mr. Elcan to the Western Mental Health Institute against his will. Dr. Causey was of the opinion that on October 20, 1995, Mr. Elcan was not of sound mind and memory. Moreover, Dr. Causey opined that on October 20, 1995, Mr. Elcan could not have recalled the nature and extent of his properties.

On November 12, 1995, Mr. Elcan's niece, Ms. Linda Augustine, came to Tennessee from California, checked Mr. Elcan out of the hospital, and took him to live in her home in Covington, Tennessee. Upon Mr. Elcan's release from the hospital, his attitude towards his brother and sister changed dramatically. Mr. Elcan thought that his brother was going to take him back to the hospital, and Mr. Elcan was angry with his sister because she initiated conservatorship proceedings against him.

While Mr. Elcan was living with Ms. Augustine, she cared for his every need. Between November 13, 1995, and December 1, 1995, Ms. Augustine made inquiries as to whether Mr. Elcan had a will. Ms. Augustine testified that Ms. Dawson had called her asking her if Mr. Elcan had a will. Ms. Dawson denied that she ever called Ms. Augustine to make inquiries as to whether Mr. Elcan had a will. Ms. Augustine testified that she handed the pen and paper to Mr. Elcan to prepare his will while he sat at her kitchen table. The will was dated December 1, 1995.[1] On this date, Mr. Elcan was taking prescribed tranquilizers and living in the home of Ms. Augustine, and she was responsible for his food, shopping, clothing, medication, and she assisted him with his bills.

Mr. Elcan had previously asked Mr. Richard Cartwright, the attorney appointed to represent him in the conservatorship proceeding, about making a will for him. Mr. Cartwright did not think it was appropriate for him to draft the will, but he advised Mr. Elcan to write his own will. Mr. Cartwright was of the opinion that Mr. Elcan was lucid when he talked to him about the will.

---

[1] Mr. Elcan's will, dated December 1, 1995, read as follows: "I Frank C Elcan am of sound mind. Because of my age I want to make it known that at my death, all of my property and assets go to Florence N. Elcan, my wife. If she dies before I do I wish to divide my Estate as follows My brother Joe Elcan five dollars, My half-sister, Elsie, Kate and Freddie five dollars each, The remainder of my Estate goes to my niece Linda Augustine who was like a daughter to us.

/s/ Frank C Elcan

Dr. Jim Causey testified that Mr. Elcan would not have been able to write the will, which had good punctuation and was generally free from spelling mistakes, without a lot of assistance. Additionally, Dr. Hutson testified that Mr. Elcan was not of sound mind and disposing memory nor could he appreciate what assets he had.

Mrs. Elcan predeceased Mr. Elcan, and Mr. Elcan died on September 1, 1996, at the age of 86. After Mr. Elcan's death, a complaint was filed to contest the will on January 27, 1997, by Mr. Elcan's surviving siblings and nephews. Ms. Augustine, the beneficiary under the will, and James Elcan, a nephew, were made party defendants. An order was entered transferring the case to the circuit court of Tipton County for trial on the issue of *devisavit vel non*. Trial was held in the circuit court before a jury, and the jury returned a verdict against the will on September 9, 1998. A Motion for New Trial was filed and an Amended Motion for New Trial was filed on February 9, 1999. The proponents of the will have appealed and present sixteen issues for our review.

**Law and Analysis**

The first seven issues cited by the appellants, as we perceive them, cite error in that Dr. Jim Causey and Dr. John Hutson were allowed to express their opinions about Mr. Elcan based on the records of the Tennessee Department of Mental Health - Western State Hospital. First, we note that the records were only marked for identification and thus were never shown to the jury. Rule 703 of the Tennessee Rules of Evidence states:

> **Bases of opinion testimony by experts.** – The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. *If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence*. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

TENN. R. EVID. 703 (emphasis added).

A treating doctor can base an opinion on reports of other professionals. See New Jersey Zinc Co. v. Cole, 532 S.W.2d 246 (Tenn. 1975). It is clear that based on the foregoing case and rule of evidence experts may base their opinions on facts or data not in evidence as long as the facts or data are trustworthy. Dr. Causey and Dr. Hutson are both licensed psychologists in the state of Tennessee and their expertise was not challenged. Moreover, both doctors had seen and evaluated Mr. Elcan within weeks of the execution of the December 1, 1995 holographic will. Both doctors had reviewed each other's records and the records of Western State Hospital regarding Mr. Elcan's hospitalization from October 20, 1995, to November 13, 1995. We find that the facts and data found in the records of Western State Hospital are of a type that are reasonably relied upon by experts in the field. Therefore, the trial court properly allowed the doctors to base their opinions on the hospital records. As a result, this issue is without merit.

Appellants also take issue with the trial court allowing Dr. Causey and Dr. Hutson to express their opinions based on the records of Western State Hospital as to whether Mr. Elcan was of sound mind and as to whether Mr. Elcan could have prepared the will. Rule 704 of the Tennessee Rules of Evidence states, "**Opinion on ultimate issue.** – Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." TENN. R. EVID. 704. Rule 704 clearly states that experts may give their opinion on an ultimate issue to be decided by the trier of fact. Dr. Causey and Dr. Hutson gave their opinions regarding Mr. Elcan's condition, mental status, soundness of mind, ability to prepare the will, and the ability to recognize, understand, and appreciate his properties. We find that this was proper under the Tennessee Rules of Evidence. As a result, this issue is also without merit.

Next, the appellants cite error in that Elisha Dyson Maclin, an eligibility counselor with the Tennessee Department of Human Services, was allowed to state her opinion as to the competency of Mr. Elcan. Part of Ms. Maclin's job was to investigate adult situations regarding living conditions. Ms. Maclin went to see Mr. Elcan at his home on October 18, 1995. When Ms. Maclin knocked on Mr. Elcan's door and identified herself, Mr. Elcan threatened to get his gun and "blow her head off." Ms. Maclin left and returned with the Munford Police and gained entry to the Elcan residence. Ms. Maclin observed that food had been left out of the freezer for days, there were maggots on food, cat and human feces on the floor and furniture, a piece of liver in a chest of drawers, and maggots in the refrigerator. Ms. Maclin stated that she had never seen anything comparable to the Elcan home. Ms. Maclin met with Mr. Elcan for about three hours, and based upon her observations of his home situation and her conversation with Mr. Elcan, she was of the opinion that, on October 18, 1995, Mr. Elcan was not of sound mind. We note that, "[t]he opinions of lay witnesses are admissible on soundness of mind if they are based on details of conversations, appearances, conduct or other particular facts from which the state of mind may be judged." In Re Estate of Elam v. Oakley, 738 S.W.2d 169, 172 (Tenn. 1987). "It is the facts detailed, and the conduct described which constitute evidence." Bills v. Lindsay, 909 S.W.2d 434, 439 (Tenn. Ct. App. 1993); see also American Trust & Banking Co. v. Williams, 225 S.W.2d 79 (Tenn. Ct. App. 1948). Clearly, based on her testimony, Ms. Maclin had a sufficient foundation for her opinion because she had observed Mr. Elcan and his living conditions, and she had spoken with him at his home. Thus, we find, based on the aforementioned cases, that no error was committed by the trial court in allowing Ms. Maclin to testify as to her opinion of Mr. Elcan's competency.

The proponents also cite error in that the court allowed Mr. Cartwright, Mr. Elcan's attorney in the conservatorship proceeding, to be cross-examined with statements from a letter written by a doctor from Western State Hospital. Mr. Cartwright was asked on cross-examination whether he knew that Dr. Gross had said that Mr. Elcan was suffering from irreversible dementia. "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. . . ." TENN. R. EVID. 611(b). Appellants argue that this was hearsay and thus should not have been allowed. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TENN. R. EVID. 801(c). The questions at issue were asked in order to prove the knowledge that Mr. Cartwright had before him regarding the opinions he gave on his direct examination. The information was not introduced

to prove the truth of the matter asserted - that Mr. Elcan had irreversible dementia - it was only introduced to prove Mr. Cartwright's knowledge that Mr. Elcan had been diagnosed as having irreversible dementia when he rendered his opinion as to Mr. Elcan's competency. Moreover, the court below gave a limiting instruction to the jury instructing them that the question was being asked for the limited purpose of determining whether Mr. Cartwright knew about the contents of the letter and what effect that knowledge had on his opinion of Mr. Elcan's competency. We find no error regarding this question.

Further, the appellants cite error in that the court below allowed Mr. Cartwright to be asked on cross-examination whether all the medical providers that are involved in this case agreed that Mr. Elcan was in need of a conservator. As we noted above, the statement was not designed to prove the truth of the matter asserted; it was for the purpose of showing the basis on which Mr. Cartwright formed his opinion as to Mr. Elcan's competency. Moreover, the court, once again, gave the jury a limiting instruction. Therefore, this issue is also without merit.

Next, the appellants cite error in that the trial court allowed Mr. Cartwright to be asked on cross-examination, "what had Ms. Kate Dawson done wrong?" The appellant argues that this information is irrelevant and was designed so that the jury would try the case on a "fairness basis." Rule 401 of the Tennessee Rules of Evidence defines "relevant evidence" as follows: "'Relevant evidence'" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TENN. R. EVID. 401. According to the record, Mr. Elcan had a very close relationship with his sister, Ms. Dawson, until the last few months of his life. Mr. Cartwright testified that Mr. Elcan believed that Ms. Dawson wanted to put him in a nursing home, and Mr. Elcan was angered by that. It was relevant to allow the question on cross- examination to show whether there really was a factual basis for Mr. Elcan to be angry with his sister, or whether his anger with her was due to delusions caused by his deteriorating condition. As a result, this issue is without merit.

Next, the appellants claim error in that the court allowed Mr. Cartwright to be cross-examined regarding a letter written by appellees' counsel, Mr. Forrester, to Mr. Cartwright and attorney David Owen. The letter in question was written on February 16, 1996, which was two and one-half months after the will was written. The letter's contents advised Mr. Cartwright that substantial additional assets belonging to Mr. Elcan had been discovered. Mr. Cartwright had testified that he had conversations with Mr. Elcan regarding his will, and it was Mr. Cartwright's opinion that Mr. Elcan recalled and understood the nature and situation of his property. The letter was not introduced to prove the truth of the matter asserted; it was introduced to impeach the credibility of Mr. Cartwright, as he had previously testified that Mr. Elcan understood the nature and extent of his property. It logically follows that if substantial additional assets of Mr. Elcan's estate were being found two and one-half months after the will was executed, Mr. Cartwright could not have thoroughly questioned Mr. Elcan about the nature and extent of his properties, as Mr. Elcan either did not remember or did not disclose all of his assets to Mr. Cartwright. Therefore, we find that there was no error.

The appellants also cite error in that Jimmy Elcan was not allowed to give his opinion as to whether Mr. Frank Elcan knew what property he owned and who he wanted to have that property. Appellants' counsel's question to Jimmy Elcan was as follows:

> Q.    Your opinion as to whether or not that Mr. Frank Elcan knew what property he owned and who he wanted to have it, your opinion, please?
> A.    In my opinion, yes.
> Mr. Forrester: Objection your honor. I don't think he can give an opinion of who Mr. Frank Elcan wanted to have his estate.
> The Court:    Be sustained.

Appellants assert that Jimmy Elcan should have been able to give his opinion as to Frank Elcan's soundness of mind. We find that Jimmy Elcan was able to give his opinion as to Frank Elcan's soundness of mind as noted in the trial transcript quoted above. Appellants seem to be arguing, however, that Jimmy Elcan should have been allowed to give his opinion as to who Mr. Frank Elcan wanted to have his property. Even if Jimmy Elcan had been allowed to answer and state that Frank Elcan wanted Linda Augustine to have his property, there was material evidence to support the jury's verdict on either lack of testamentary capacity or undue influence. Therefore, we hold that this was harmless error.

The appellants also take issue with the jury instructions. They contend that the trial court erred by refusing to give their requested jury charge. The appellants requested jury charge was in part as follows:

> **BURDEN OF PROOF AS TO UNDUE INFLUENCE:** The burden of proving the due execution of the will is always on the proponent, but when this has been done the presumption of the law is in favor of the competency of the testator and that he was under no undue influence. The burden of overcoming the legal presumption of the capacity of the testator and that said will was voluntarily and freely made and showing a want of capacity and undue influence by clear and satisfactory evidence is upon the contestant who seeks to impeach the will.

Trial courts should give a requested instruction if it is a correct statement of the law that is applicable to the facts in evidence. See Hayes v. Gill, 390 S.W.2d 213, 214 (1965); Strickland v. City of Lawrenceburg, 611 S.W.2d 832, 837 (Tenn. Ct. App. 1980); Tallent v. Fox, 141 S.W.2d 485, 497 (Tenn. Ct. App. 1940).

The appellants proposed charge neglected to inform the jury that undue influence may by presumed from a confidential relationship. See Bills v. Lindsay, 909 S.W.2d 434, 440 (Tenn. Ct.

App. 1993). The judge's charge, however, correctly informed the jury that, "there is a presumption that the will was obtained by undue influence of Ms. Augustine if you find the following: Number one, that a confidential relationship existed between Frank Elcan, the person making the will, and Ms. Augustine, and Number Two, that Ms. Augustine was active in causing the will to be made and unduly profited from it. . . ." We find that the appellants' requested jury instruction was not a correct statement of the law under the facts of this case. As a result, we find that the trial court properly rejected the appellants' proposed jury instruction.

Next, the appellants argue that the trial court erred in charging the jury regarding their specific question of whether the jury must find undue influence if they found a confidential relationship. The appellants argue that the trial court should have used their proposed response to the jury's question. The trial court received a question from the jury that was as follows, "If we agree on the existence of the confidential relationship, must we find the will invalid because the undue influence is presumed?" In response to the jury's question, the trial judge reread a portion of the charge to the jury, reminding them that the whole charge is important and not to give undue emphasis to one portion or the other. It is not error for a court to repeat certain instructions in response to a question by a jury after it has retired. See Monday v. Millsaps, 264 S.W.2d 6, 21 (Tenn. Ct. App. 1953). Moreover, we note that:

> The only proper response by a trial judge to a question from the jury or an individual juror is to recall the jury, counsel, and parties into open court, hear the question, reinstruct the jury on the portion of the charge that responds to the question, if necessary, and make clear that the repeated instruction should not be considered as emphasis of that portion of the charge.

Spencer v. A-1 Crane Service, Inc., 880 S.W.2d 938, 941 (Tenn. 1994). We note that this is exactly what the trial judge below did. In response to the jury's question, the trial judge stated, "I'd like to read this portion of the charge to you, remembering that the entire charge is important and not to give undue emphasis to one portion or the other. I would like to read the portion of the charge to you that I feel addresses your question. . . ." Then, the trial judge reread a portion of the charge to the jury. We find that the trial judge did not err in his response to the jury's question.

Finally, the appellants argue that the trial court erred in failing to grant their motion for a new trial. The appellants insist that "there was no evidence to sustain the verdict of the jury." Additionally, appellants assert that "the verdict of the jury was contrary to the evidence, which preponderated against the verdict." When jury trials are involved, our task is to determine whether there is any material evidence to support the jury's verdict. See Harper v. Watkins, 670 S.W.2d 611, 631 (Tenn. Ct. App. 1983); Lassetter v. Henson, 588 S.W.2d 315, 317 (Tenn. Ct. App. 1979). See also T.R.A.P. 13(d). Moreover, "we must take the strongest legitimate view of all the evidence to uphold the verdict, assume the truth of all that tends to support it and discard all to the contrary. We are bound to allow all reasonable inferences to sustain the verdict, and, if there is any material

evidence to support the verdict, we must affirm." <u>See Harper</u>, 670 S.W.2d at 631. We do not reweigh the evidence. <u>See Electric Power Bd. v. St. Joseph Valley Structural Steel Corp.</u>, 691 S.W.2d 522, 526 (Tenn. 1985).

We have reviewed the evidence using the proper standard of review and have determined that there is material evidence to support the jury's verdict. Therefore, we find that the trial court did not err when it denied the plaintiff's motion for a new trial.

## Conclusion

The judgment of the trial court is affirmed, and the case is remanded for whatever further proceedings may be necessary. The costs of this appeal are taxed to the appellants, Linda Augustine and Jimmy Elcan, and their sureties, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE