IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
MARCH 8, 2001 Session

## KATHRYN DARDEN v. BRADLEY SENSING, ET AL.

**Direct Appeal from the Chancery Court for Davidson County**
**No. 97-2532-III; The Honorable Ellen Hobbs Lyle, Chancellor**

---

**No. M2000-01519-COA-R3-CV - Filed July 27, 2001**

---

This appeal arises from the Appellant's purchase of a house and property owned by the Appellees. Following the purchase, a landslide occurred on the property. The Appellant filed a complaint in the Chancery Court of Davidson County seeking compensatory damages against the Appellees for fraud, intentional misrepresentation, negligent misrepresentation, breach of warranty, breach of contract, deceit, and violation of the Tennessee Consumer Protection Act. Following a jury trial, the jury entered a verdict in favor of the Appellees. The Appellant filed a motion for a new trial. The trial court denied the motion for a new trial.

The Appellant appeals the jury verdict in favor of the Appellees and the denial of the motion for a new trial by the Chancery Court of Davidson County. For the reasons stated herein, we affirm the trial court's decision.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, joined.

Larry L. Crain; Clinton W. Watkins, Brentwood, TN, for Appellant

W. Gary Blackburn; John R. Callcott, Nashville, TN, for Appellees

### OPINION

### I. Facts and Procedural History

In 1985, the Appellee, Bradley Sensing ("Mr. Sensing") purchased property upon which he constructed a single family home located at 7921 Saddle Ridge Trace, Nashville, Tennessee 37221 ("the Saddle Ridge property" or "the property"). The Saddle Ridge property consists of a 1.9 acre lot situated on a steep hill with a one and one-half story house located on the upper part of the hill.

On May 12, 1994, Mr. Sensing transferred the property to the Appellee, Air Affiliates, Inc. ("Air Affiliates"), a Tennessee corporation of which Mr. Sensing is president. Air Affiliates rented the Saddle Ridge property back to Mr. Sensing at which he continued to reside.

The Appellant, Kathryn E. Darden ("Ms. Darden"), considered purchasing the Saddle Ridge property and visited the property on several occasions. On February 18, 1995, Mr. Sensing signed a Tennessee Residential Property Condition Disclosure form and provided the form to Ms. Darden. The form asked whether Mr. Sensing, as seller, was aware of "any settling from any cause, or slippage, sliding, or other soil problems." Mr. Sensing checked "no." The form asked whether he was aware of "any flooding, drainage, or grading problems." Mr. Sensing checked "no." The form also asked whether he was aware of "major property or structural damage from . . . landslides." Mr. Sensing checked "no." On March 7, 1995, Mr. Sensing entered into a contract with Ms. Darden for the sale of the Saddle Ridge property in the amount of $196,500.00. Revisions were made to the contract on March 8 and March 16, 1995. On April 17, 1995, Mr. Sensing transferred ownership of the property to Ms. Darden.

On March 13, 1997, following a heavy rain, a landslide occurred on the Saddle Ridge property. Ms. Darden claims that the ground cracked approximately five feet from the sidewalk in front of her home at the nearest point and dropped approximately one foot at the crack. A ridge of dirt formed approximately 175 feet downhill. The area of the landslide constituted approximately 100 feet by 175 feet. The landslide caused a part of the driveway to crumble away and created an accordian effect along the entire front of the lawn. Ms. Darden obtained several estimates regarding the cost to repair the property ranging from $52,000.00 to $300,000.00. Ms. Darden retained the services of Dr. Ron Jones ("Dr. Jones"), a civil engineer specializing in the evaluation and cause of geological movement. The total cost Ms. Darden paid to Dr. Jones to repair the property was $73,500.00.

On July 30, 1997, Ms. Darden filed a complaint in the Chancery Court of Davidson County seeking compensatory damages against Mr. Sensing and Air Affiliates for fraud, intentional misrepresentation, negligent misrepresentation, breach of warranty, breach of contract, deceit, and violation of the Tennessee Consumer Protection Act. On September 26, 1997, Mr. Sensing and Air Affiliates filed an answer and a motion to dismiss for failure to state a claim upon which relief can be granted. On November 18, 1997, the trial court denied Mr. Sensing and Air Affiliates' motion to dismiss. On September 21, 1998, Mr. Sensing and Air Affiliates filed a motion for partial summary judgment. The trial court denied Mr. Sensing and Air Affiliates' motion for partial summary judgment.

The jury trial commenced on January 31, 2000. At the close of Ms. Darden's proof, Mr. Sensing and Air Affiliates moved for a directed verdict. The trial court denied the motion for a directed verdict. On February 3, 2000, the jury returned a verdict in favor of Mr. Sensing and Air Affiliates, finding specifically:

1) Ms. Darden failed to prove by clear and convincing evidence that Mr. Sensing and Air Affiliates intentionally or recklessly misrepresented a past or existing material fact regarding the real

estate that was sold to Ms. Darden with the intention that Ms. Darden would rely on that misrepresentation.

2) Mr. Sensing and Air Affiliates did not misrepresent a past or existing material fact regarding the real estate that was sold to Ms. Darden without exercising reasonable care to determine its truth and with the intention that Ms. Darden would rely on that misrepresentation.

On March 15, 2000, Ms. Darden filed a motion for a new trial. On May 23, 2000, the trial court entered an order denying the motion for a new trial. This appeal followed.

## II. Standard of Review

Our standard of review as to findings of fact by a jury in a civil action is limited to determining whether there is any material evidence to support the verdict. See TENN. R. APP. P. 13(d). Appellate courts do not determine the credibility of witnesses or weigh evidence on appeal from a jury verdict. See Pullen v. Textron, Inc., 845 S.W.2d 777, 780 (Tenn. Ct. App.1992) (citing Crabtree Masonry Co. v. C & R Constr., Inc., 575 S.W.2d 4, 5 (Tenn. 1978)). A judgment based on a jury verdict will not be disturbed on appeal where the record contains material evidence supporting that verdict. See Reynolds v. Ozark Motor Lines, Inc., 887 S.W.2d 822, 823 (Tenn. 1994).

## III. Law and Analysis

The following issues are presented for our review:
1) Whether there is any material evidence to support the jury verdict;
2) Whether the trial court erred in denying Ms. Darden's motion for a new trial;
3) Whether the common law claim for negligent misrepresentation was barred by the one year statute of limitations imposed by the Tennessee Residential Disclosure Act;
4) Whether the Tennessee Consumer Protection Act applies to the sale of a home by an entity not in the business of buying and selling real estate; and
5) Whether Ms. Darden's appeal is frivolous.
We will examine each of these issues in turn.

### Jury Verdict

The first issue presented for our review is whether there is any material evidence to support the jury verdict. Ms. Darden argues that there was no material evidence to support the jury verdict in favor of Mr. Sensing and Air Affiliates. When jury trials are involved, our task is to determine whether there is any material evidence to support the jury's verdict. See Harper v. Watkins, 670 S.W.2d 611, 631 (Tenn. Ct. App. 1983); Lassetter v. Henson, 588 S.W.2d 315, 317 (Tenn. Ct. App. 1979); see also TENN. R. APP. P. 13(d). In reviewing evidence, we are required to "take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict." Lassetter, 588 S.W.2d at 317 (quoting D. M. Rose & Co. v. Synder, 206 S.W.2d 897, 901 (Tenn. 1947); Kidd v. Dunn, 499 S.W.2d 898, 900 (Tenn. Ct. App. 1973)). Appellate courts do not determine the credibility of witnesses or weigh evidence on appeal from a jury verdict. See Pullen

v. Textron, Inc., 845 S.W.2d 777, 780 (Tenn. Ct. App. 1992) (citing Crabtree Masonry Co. v. C & R Constr., Inc., 575 S.W.2d 4, 5 (Tenn. 1978)). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. See Sisk v. Valley Forge Ins. Co., 640 S.W.2d 844, 849 (Tenn. Ct. App. 1982).

Over the course of the trial, eight witnesses testified as to their observations of the Saddle Ridge property both before and after the landslide. The witnesses also answered questions pertaining to potential knowledge of a prior landslide or concealment of that knowledge by Mr. Sensing. Mr. Sensing testified that, during construction on the Saddle Ridge property home in 1985, trees were removed from the property which caused soil erosion. Without the trees, the rain turned the loose dirt to mud which washed down the hill. Mr. Sensing lined bales of hay along the bottom of the yard to prevent the mud from washing into the street. Mr. Sensing testified that, once he planted a good stand of grass, the erosion stopped by the summer of 1987. Mr. Sensing testified that another erosion problem occurred sometime between 1986 to 1988 when the erosion rolled up and formed a mound that measured approximately two feet by twenty-five feet. The mound was approximately six inches in height. Mr. Sensing testified that he covered the mound with grass seed. Mr. Sensing testified that he discussed with Ms. Darden a drainage ditch and standing water in the backyard. Mr. Sensing testified that he never discussed with Ms. Darden the erosion problems or the mound because it was no longer a problem. Mr. Sensing testified that he saw nothing to indicate there had been a landslide on the property.

Ms. Darden testified that, prior to the purchase of the Saddle Ridge property, she was concerned with standing water in the backyard and a gully in the side of the yard. Ms. Darden testified that Mr. Sensing downplayed these problems as insignificant. Ms. Darden testified that Mr. Sensing told her that he had not had any erosion. Ms. Darden testified that she relied on Mr. Sensing's verbal and written assurances concerning the property. Ms. Darden testified that, had she known of the erosion problems, she would have called in a land specialist prior to the purchase. Ms. Darden testified that, shortly after she moved onto the Saddle Ridge property, she found Jimmy Prince ("Mr. Prince"), the lawn mower for Mr. Sensing, mowing her lawn. Mr. Prince pointed out to her the mound at the foot of the hill. Ms. Darden testified that, before she bought the house, she was aware of an indenture or ridge-like place on the property, but she did not know what it was. Ms. Darden testified that she never asked Mr. Sensing whether a landslide had occurred.

Mr. Prince testified that he saw the mound at the foot of the hill of the Saddle Ridge property. Mr. Prince testified that Mr. Sensing told him that the mound occurred one or two years before Mr. Prince began mowing the lawn, approximately 1989 or 1990. Mr. Prince testified that, prior to Ms. Darden purchasing the property, he never saw a crack on the property like that which occurred after the landslide.

Linda Reed ("Ms. Reed") lived directly across the street from the Saddle Ridge property. Ms. Reed testified that she observed mud washing into the street from Mr. Sensing's property. Ms. Reed described the mud as a swell "like a wave coming down the hill." Ms. Reed testified that she

observed soil accumulating at the bottom of the hill sometime between 1992 to 1994. Ms. Reed testified that she never saw a crevice or a crack on the property, and she was not aware of any landslides occurring while Mr. Sensing owned the property.

Dr. Jones testified that evidence of previous movement is an important predictor with regard to property as to whether there may be a future landslide. Dr. Jones testified that examples of previous movement would be "old scars from the escarpment where tensions cracks had opened in the past. There might be tilted trees, hummocky ground where you see old rollovers and things of that type." Dr. Jones testified that it takes experience to know geology and topographic features in order to evaluate whether property could experience a landslide. Dr. Jones testified that he saw a major escarpment, or crack, in the ground when he examined the Saddle Ridge property for Ms. Darden. Dr. Jones testified that he saw no sign of a prior escarpment. Dr. Jones testified that "not too many untrained people would know what to look for" to predict a landslide. Finally, Dr. Jones testified:

> Q. Now, when you – you were describing a moment ago how these landslides take place. Did I understand you correctly . . . Dr. Jones, that the water saturates down through this porous soil until it reaches the rock surface below?
> A. Until it reaches some impermeable layer which may be a clay layer or a bedrock layer.
> Q. So this is not the same thing then as wash, erosion on the surface?
> A. That's correct. It's something that's happening below ground.
> Q. So this property could have – say they took trees off the side of that hill and then it rained before the grass had set in and washed mud and stuff down into the street. That's not a landslide, is it?
> A. No. That would be a surface erosion problem.

John Lucas ("Mr. Lucas"), a home builder, built the Saddle Ridge property home. Mr. Lucas lived next door to Mr. Sensing until 1989. Mr. Lucas testified that he saw nothing to indicate that there had been a landslide on Mr. Sensing's property.

Jerry Blair ("Mr. Blair"), a real estate agent, represented Mr. Sensing in the sale of the Saddle Ridge property to Ms. Darden. Mr. Blair inspected the property prior to putting it on the market. Mr. Blair testified that he saw normal wash, or soil deposits, at the bottom of the hill. Mr. Blair testified that Ms. Darden commented on the wash when viewing the Saddle Ridge property.

Tracy Hogan ("Ms. Hogan"), the former wife of Mr. Sensing, resided on the Saddle Ridge property until 1991. Ms. Hogan testified that, after soil erosion occurred as a result of removing the trees, "the yard never washed, split, or did anything else after that. It stayed intact." Ms. Hogan testified that she saw no evidence of a landslide on the property.

We have reviewed the evidence using the proper standard of review and have determined that there is material evidence to support the jury verdict. Accordingly, we decline to disturb the jury verdict on appeal.

## Motion for a New Trial

The second issue presented for our review is whether the trial court erred in denying Ms. Darden's motion for a new trial. Following the jury verdict, Ms. Darden filed a motion for a new trial in which she argued that the jury verdict was contrary to the weight of the evidence. The trial court denied the motion for a new trial without comment. A motion for a new trial requires the trial judge to perform the function of thirteenth juror. See Ridings v. Norfolk S. Ry. Co., 894 S.W.2d 281, 288 (Tenn. Ct. App. 1994). As the thirteenth juror, "the trial judge is under a duty to independently weigh the evidence and determine whether the evidence preponderates in favor of or against the verdict." Shivers v. Ramsey, 937 S.W.2d 945, 947 (Tenn. Ct. App. 1996). The decision to grant or deny a motion for a new trial is largely within the trial court's discretion. See Mize v. Skeen, 468 S.W.2d 733, 736 (Tenn. Ct. App. 1971). Where the trial judge has approved the jury's verdict, our standard of review is whether there is any material evidence to support the verdict. See TENN. R. APP. P. 13(d). We must presume that the trial judge adequately performed her function as thirteenth jury when, as in the case at bar, she simply approves a jury verdict without comment when ruling on a motion for a new trial. See Sholodge Franchise Sys., Inc. v. McKibbon Bros., Inc., 919 S.W.2d 36, 41 (Tenn. Ct. App. 1995). After reviewing the record as a whole, we find that the trial judge properly performed her duty as thirteenth juror and that there is material evidence to support the jury's verdict. Accordingly, we find the trial court did not err in denying the motion for a new trial.

## Statute of Limitations

The third issue presented for our review is whether the common law claim for negligent misrepresentation was barred by the one year statute of limitations under the Tennessee Residential Disclosure Act. Because we find that there is material evidence to support the jury verdict and that the trial court did not err in denying the motion for a new trial, we decline to address Mr. Sensing and Air Affiliates' issue relating to the statute of limitations.

## Tennessee Consumer Protection Act

The fourth issue presented for our review is whether the Tennessee Consumer Protection Act applies to the sale of a home by an entity not in the business of buying and selling real estate. Because we find that there is material evidence to support the jury verdict and that the trial court did not err in denying the motion for a new trial, we decline to address Mr. Sensing and Air Affiliates' issue relating to the Tennessee Consumer Protection Act.

**Frivolous Appeal**

The fifth issue presented for our review is whether Ms. Darden's appeal is frivolous under section 27-1-122 of the Tennessee Code. Tennessee law permits any reviewing court to award damages for a frivolous appeal:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

TENN. CODE ANN. § 27-1-122 (2000).

A frivolous appeal is one that is devoid of merit or has no reasonable chance of succeeding. See Combustion Eng'g, Inc. v. Kennedy, 562 S.W.2d 202, 205 (Tenn. 1978); Davis v. Gulf Ins. Group, 546 S.W.2d 583, 586 (Tenn. 1977); Jackson v. Aldridge, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999); Industrial Dev. Bd. v. Hancock, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). Determining whether to award damages based on a frivolous appeal is a discretionary decision. See Banks v. St. Francis Hosp., 697 S.W.2d 340, 343 (Tenn. 1985).

Mr. Sensing and Air Affiliates argue that this Court should award reasonable attorney's fees and costs because Ms. Darden's appeal is frivolous. We do not deem this to be an appropriate case for imposition of sanctions for a frivolous appeal and, therefore, respectfully deny Mr. Sensing and Air Affiliates' request in this regard.

**IV. Conclusion**

For the foregoing reasons, the decision of the trial court is affirmed. Costs of this appeal are taxed against the Appellant, Kathryn E. Darden, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE