# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 23, 2013 Session

## JAMES L. MASSINGILLE v. G. WAYNE VANDAGRIFF[1]

**Appeal from the Circuit Court for Coffee County**
**No. 37899     L. Craig Johnson, Judge**

---

**No. M2012-01259-COA-R3-CV - Filed September 24, 2013**

---

In this malicious prosecution action, the jury awarded the plaintiff compensatory damages and punitive damages.  The trial court affirmed the punitive damages award; the court suggested a remittitur of the compensatory damages award, which the plaintiff accepted under protest.  The defendant appeals the finding of liability, the award of damages, the admission of evidence, and the procedure followed by the court in affirming the punitive damages award; the plaintiff appeals the remittitur of the compensatory damages award. Finding that the court erred when it failed to follow the appropriate procedures in affirming the punitive damages award, we vacate the award and remand the case for further proceedings; in all other respects the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., and ANDY D. BENNETT, JJ., joined.

Gerald. L. Ewell, Jr., Tullahoma, Tennessee, for the appellant, G. Wayne Vandagriff.

D. Andrew Saulters, Nashville, Tennessee, for the appellee, James L. Massingille.

---

[1]  At various places in the record, Defendant's name is spelled Vandergriff, Vandagriff, and Vandagrif.  The Affidavit of Complaint which gave rise to this action was signed by G. W. Vandagriff; consequently, we will use that spelling in this opinion.

## OPINION

### I. FACTS AND PROCEDURAL HISTORY

This appeal arises out of a malicious prosecution suit brought by James Massingille, who purchased a farm in 1977 in Coffee County which adjoined the farm owned by G. Wayne Vandagriff. During the first year, Mr. Massingille had his land surveyed and markers placed at the boundary between his property and the Vandagriff farm. Mr. Massingille then began clearing his land on the side opposite the common boundary line in order to farm his land. Several times over the next twelve years Mr. Vandagriff requested to purchase some of the Massingille property near the boundary line in order to keep the Vandagriff property wooded for privacy; Mr. Massingille declined to sell his property.

In early 2009, in preparation to build a fence along the boundary line, Mr. Massingille replaced one of the corner markers with a larger post. A confrontation arose between he and Mr. Vandagriff after the marker was replaced, in which Mr. Vandagriff threatened to have Mr. Massingille arrested and jailed. Days later Mr. Massingille resumed his work, attaching a pink string to the back side of the post and stretching it from one corner marker to another. Mr. Massingille had hired Vincent Griffin to cut twigs and brush along the property line; while Mr. Griffin was working, Mr. Vandagriff called the Sheriff's Department to have Mr. Massingille arrested for cutting trees on the Vandagriff property. Deputy Toby Alonso came to the scene and interviewed both parties; he declined to arrest Mr. Massingille, determining that the dispute was a civil rather than criminal matter.

On June 5, 2009, Mr. Vandagriff initiated a criminal prosecution, alleging that Mr. Massingille committed criminal trespass in violation of Tenn. Code Ann. § 39-14-405. In the Affidavit of Complaint he asserted:

> Affiant states for the past 3 months March-June 2009 subject has been on his property, 754 Toliver Lake Road, Manchester, Tn., tearing down property markers and has cut over 100 hundred trees on said property to erect a fence which is possibly on affiant's property.

Mr. Massingille was served with the warrant on June 21, but was not arrested, photographed, or fingerprinted. The case was to be heard on July 6, but was rescheduled to August 17 for the District Attorney to perform further investigation. On the second court date the charge was dismissed.

On June 1, 2010, Mr. Massingille initiated the instant malicious prosecution action; trial before a jury took place on October 12–13, 2011. The jury found in favor of Mr.

Massingille and awarded $66,500.00 in compensatory damages, divided as follows: $1,500.00 for attorney's fees incurred by Mr. Massingille in the defense of the criminal charge, $25,000.00 for mental anguish, and $40,000.00 for loss of enjoyment of life; the jury also found that Mr. Massingille was entitled to punitive damages. In the punitive damage phase of the trial the jury awarded $5,000.00.

Mr. Vandagriff filed a Motion for New Trial and/or to Alter or Amend Judgment on November 23, and amended the motion on November 28. On April 6, 2012, the court entered an order and opinion stating that:

> "The jury verdict was excessive as to an award for Mental Anguish and a separate $40,000 for Loss of Enjoyment of Life. The verdict for Loss of Enjoyment of Life was outside the bounds of reasonableness and not supported by the evidence. The Court suggests a Remittitur that removes the $40,000 verdict for Loss of enjoyment of Life but upholds all other aspects of the Jury verdict to include punitive damages."

Mr. Massingille filed a notice of acceptance of remittitur under protest and appeal on May 10; Mr. Vandagriff filed his notice of appeal on June 6.

Mr. Vandagriff contends that the evidence is insufficient to support the jury's finding of liability and award of damages; he also complains that the court erred in admitting certain evidence and in failing to follow the procedural safeguards attendant to an award of punitive damages. Mr. Massingille appeals the remitittur of the verdict.

## II. ANALYSIS

### A. Finding of Liability

In order to succeed on a malicious prosecution claim, a plaintiff must demonstrate that 1) a prior lawsuit or judicial proceeding was brought against the plaintiff without probable cause; 2) the prior lawsuit or judicial proceeding was brought against the plaintiff with malice; and 3) the prior lawsuit or judicial proceeding terminated in the plaintiff's favor. *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005) (citing *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992)). Mr. Vandagriff does not dispute that a prior judicial proceeding took place and terminated in Mr. Massingille's favor; the dispute is whether the action was brought without probable cause and with malice.

The determination of whether the defendant in a malicious prosecution action had probable cause to initiate the criminal proceeding is a question for the jury. *Roberts v.*

*Federal Express Corp.*, 842 S.W.2d 246, 248–249 (Tenn. 1992). Similarly, the decision of whether a defendant acted with malice is a question for the jury. *Residents Against Industrial Landfill Expansion, Inc. v. Diversified Systems, Inc.*, No. 03A01-9703-CV-00102, 1998 WL 18201, at *4 (Tenn. Ct. App. 1998). When a jury has rendered a verdict, our task is to determine whether there is any material evidence to support the jury's verdict. *Harper v. Watkins*, 670 S.W.2d 611, 631 (Tenn. Ct. App. 1983); *Lassetter v. Henson*, 588 S.W.2d 315, 317 (Tenn. Ct. App. 1979); Tenn. R. App. P. Rule 13 (d). We do not reweigh the evidence. *Electric Power Bd. v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn. 1985).

### 1. Probable Cause

Tennessee courts have defined probable cause as "the existence of such facts and circumstances as would excite in a reasonable mind the belief that the person charged was guilty of the crime for which he was prosecuted." *Smith v. Harford Mutual Insurance Company*, 751 S.W.2d 140, 143 (Tenn. Ct. App. 1987). Probable cause is to be determined solely from an objective examination of the surrounding facts and circumstances. *Roberts*, 842 S.W.2d at 248– 249.

Mr. Vandagriff charged Mr. Massingille with violation of Tenn. Code Ann. § 39-14-405, which states in pertinent part:

(a) A person commits criminal trespass if the person enters or remains on property, or any portion of property, without the consent of the owner.

Evidence from which the jury could determine that Mr. Vandagriff lacked probable cause to initiate the prosecution for criminal trespass included: his acknowledgment that he did not know if the property markers were correct or whether Mr. Massingille had cut vegetation on Mr. Vandagriff 's land when the criminal trespass proceedings were initiated; that before commencing the prosecution Mr. Vandagriff's counsel advised him to obtain a land survey, but he did not have the survey performed until four months after initiating the prosecution[2]; and Deputy Alonso's testimony that he advised Mr. Vandagriff in March 2009 that the dispute was civil in nature and not criminal.[3]

---

[2] The survey which Mr. Vandagriff procured was introduced at trial by Mr. Massingille 's counsel and demonstrated that Plaintiff did not alter the original position of the corner markers distinguishing his property from Mr. Vandagriff 's property.

[3] Mr. Vandagriff cites the testimony of Mr. Massingille and Deputy Alonso that they believed that Mr. Vandagriff thought Mr. Massingille had cut vegetation on the Vandagriff land in support of his
(continued...)

## 2. Malice

In a malicious prosecution case, any improper motive is sufficient to constitute malice; ill will or personal hatred is not needed. *Kelley v. Tomlinson*, 46 S.W.3d 742, 746 (Tenn. Ct. App. 2001). Malice may be inferred from the absence of probable cause. *Odom v. Gray*, 508 S.W.2d 526, 529 (Tenn. 1974). The element of malice involves a question of subjective intent. *Roberts* 842 S.W.2d at 248.

Evidence from which the jury could conclude that Mr. Vandagriff acted with malice included: Mr. Massingille's testimony that Mr. Vandagriff did not want the woods on his property cleared and became upset when Mr. Massingille refused to sell him a portion of the Massingille land to act as a buffer; that Mr. Vandagriff threatened to have Mr. Massingille arrested and jailed for removing a corner marker, which Mr. Massingille replaced; and Deputy Alonso's testimony that Mr. Vandagriff requested that he arrest Mr. Massingille for trespassing and cutting trees on the Vandagriff land in March 2009. As evidence of his subjective intent, Mr. Vandagriff testified:

> Q. Okay. Isn't it true, Mr. Vandagriff, that you wanted your neighbor and former friend arrested and put in jail? Is that true?
> A. I didn't care if he was put in jail. All I wanted was to get some restitution for my damages to get him to go and leave me alone. I didn't know – they said if I would take him to court and they prosecuted him, he would have to make restitution and just stay off my property. That's all I was after.
>
> Q. You set the process in motion, didn't you?
> A. I was just setting the process in motion where maybe he would leave me alone.
> * * *
> Q. When you met with the district attorney they told you that this could result in jail time for Mr. Massingille, true?
> A. They said it could, but they said it wouldn't be much. They said it was really a civil matter and go back and sue him yourself.

---

[3](...continued)
contention that Mr. Massingille did not present any proof to establish the lack of probable cause. The subjective thoughts of a witness, however, are immaterial to the determination of whether probable cause exists at the time criminal charges are commenced. *See Roberts*, 842 S.W.2d at 248.

Sufficient evidence exists to support the jury's conclusion that Mr. Vandagriff lacked probable cause and acted with malice when he initiated the criminal prosecution.

## B. Damages

In a malicious prosecution action a party may recover damages which "proximately result to plaintiff, his person, property, or reputation." *Ryerson v. American Surety Company of New York*, 373 S.W.2d 436, 437 (Tenn. 1963); *Pullen v. Trexton Inc.*, 845, S.W.2d 777, 780 (Tenn. Ct. App. 1992). In addition, damages may be granted for humiliation, mental suffering, and punitive damages. *Thompson v. Schulz*, 240 S.W.2d 252, 256 (Tenn. Ct. App. 1949); *Odom*, 508 S.W.2d at 532; *Hodges v. S. C. Toof & Co.*, 833 S.W.2d 896 at 901 (Tenn. 1992). When a jury has awarded compensatory damages, our task is to determine whether there is material evidence to support the jury's verdict. *Harper*, 670 S.W.2d at 631; Tenn. R. App. P. Rule 13 (d). We take the strongest legitimate view of all the evidence to uphold the verdict, assuming the truth of all that tends to support it. *Harper*, 670 S.W.2d at 631. We are bound to allow all reasonable inferences to sustain the verdict and if there is material evidence to support the verdict, we must affirm. *Id.* We do not reweigh the evidence. *Electric Power Bd.*, 691 S.W.2d at 526.

The elements of the jury's award included: the amount Mr. Massingille paid his counsel to defend him on the criminal charge, compensatory damages for mental anguish and loss of enjoyment of life, and punitive damages. Mr. Vandagriff does not raise an issue with respect to the award for reimbursement of the counsel fee; rather, he contends that the evidence does not support an award for mental anguish and that the trial court erred in approving the award of punitive damages.

### 1. Damages for Emotional Distress

The court's instruction on damages included the following:

*Mental suffering*. Mental suffering is reasonable compensation for any mental suffering, and mental discomfort suffered by the plaintiff. Mental suffering includes anguish, grief, shame, or worry.

Pursuant to this instruction, the jury awarded Mr. Massingille $25,000.00, which the court termed "mental anguish" in its order.[4] In reliance on *Rogers v. Louisville Land* Co., 367

---

[4] "Mental suffering" and "mental anguish" are interchangeable terms. BLACK'S LAW DICTIONARY (9th ed. 2009). "Emotional distress", defined as a highly unpleasant mental reaction due to

(continued...)

S.W.3d 196 (Tenn. 2012), Mr. Vandagriff contends that there was no proof of "severe mental injury" and, consequently, the issue of emotional distress should not have been submitted to the jury.

Mr. Vandagriff misconstrues the holding of *Rogers*, which was a suit to recover for breach of contract, intentional infliction of emotional distress and outrageous conduct arising out of alleged inadequate maintenance of a cemetery. The court in *Rogers* was reviewing the law pertaining to the tort of intentional infliction of emotional distress and noted that "serious mental injury" was an element of an intentional infliction of emotional distress claim; the court's discussion of the term was entirely in that context. *Rogers*, 367 S.W.3d at 205.[5]

---

[4](...continued)
another person's conduct, is likewise interchangeable with "mental suffering" and "mental anguish". *Id.*

[5] The Court stated:

Ms. Rogers' claim is based on the tort of intentional infliction of emotional distress. The elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff.

*Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). In further discussing the "severe mental injury" element, the court noted:

To summarize the preceding review of the law in Tennessee regarding the "severe mental injury" element of the torts of intentional infliction of emotional distress and negligent infliction of emotional distress, the following nonexclusive factors inform the analysis and are pertinent to support a plaintiff's claim that he or she has suffered a serious mental injury:
(1) Evidence of physiological manifestations of emotional distress, including but not limited to nausea, vomiting, headaches, severe weight loss or gain, and the like;
(2) Evidence of psychological manifestations of emotional distress, including but not limited to sleeplessness, depression, anxiety, crying spells or emotional outbursts, nightmares, drug and/or alcohol abuse, and unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry;
(3) Evidence that the plaintiff sought medical treatment, was diagnosed with a medical or psychiatric disorder such as post-traumatic stress disorder, clinical depression, traumatically induced neurosis or psychosis, or phobia, and/or was prescribed medication;
(4) Evidence regarding the duration and intensity of the claimant's physiological symptoms, psychological symptoms, and medical treatment;
(5) Other evidence that the defendant's conduct caused the plaintiff to suffer significant impairment in his or her daily functioning; and
(6) In certain instances, the extreme and outrageous character of the defendant's conduct is itself important evidence of serious mental injury.

(continued...)

*Rogers* does not stand for the proposition that recovery for emotional distress, mental suffering, or mental anguish, suffered as a result of a tortious act other than the tort of intentional or negligent infliction of emotional distress, must be based on proof of a severe mental injury.

The instruction given the jury in this case was similar to that set forth in the Tennessee Pattern Jury Instructions.[6] Evidence from which the jury in this case could conclude that Mr. Massingille was entitled to damages for mental suffering included: Mr. Massingille's testimony that he felt anxious, upset, and "worried to death" prior to the first court date because he did not know what was going to happen to him; that he felt embarrassed and humiliated after informing his superiors within the Coffee County School system[7], his pastor, and Sunday school teacher; that his name appeared in the local paper under the "criminal charges" section; and that he suffered from sleepless nights and went on a "quick diet". In addition, Mr. Massingille's wife testified that he suffered from anxiety due to the criminal charges against him.

Material evidence exists to support the jury's award to Mr. Massingille for mental anguish.

## 2. Punitive Damages

Punitive damages may be awarded when there is a finding, by clear and convincing evidence, that a defendant has acted either (1) intentionally; (2) fraudulently; (3) maliciously; (4) or recklessly. *Hodges*, 833 S.W.2d at 901. When the jury has awarded punitive damages, the trial judge must review the award giving consideration to all matters on which the jury was instructed and set forth the reasons for approving or decreasing the award in findings of

---

[5](...continued)
*Id.* at 209-10.

[6] Tennessee Pattern Instruction 14.01, Compensatory Damages, states in pertinent part:

*Physical pain and mental suffering.* Physical pain and suffering is reasonable compensation for any physical pain and suffering, physical and mental discomfort suffered by the plaintiff, [and the present cash value for pain and suffering likely to be experienced in the future.] Mental suffering includes anguish, grief, shame, or worry.

Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 14.01 (2013 ed.).

[7] Mr. Massingille is a teacher at Coffee County High School.

fact and conclusions of law. *Id.* at 902.[8] In order "to clearly demonstrate a consideration of all relevant factors", the court's findings and conclusion should explicitly refer to each of the factors listed in *Hodges*, as well as to any other facts supporting the award of punitive damages. *Culbreath v. First Tennessee Bank National Association*, 44 S.W.3d 518, 529 (Tenn. 2001) (citing *Hodges*, 833 S.W.2d at 902).

The jury found that Mr. Massingille was entitled to an award of punitive damages in the amount of $5,000.00. The trial court approved the award; however, the court did not state its findings relative to the relevant *Hodges* factors or other facts to support the award. In the absence of such findings and conclusions, we cannot adequately review the award of punitive damages. *Culbreath*, 44 S.W.3d at 528. Consequently, we must vacate the award and remand the case for the trial court to enter a supplemental order setting forth its findings as to the *Hodges* factors and the reasons supporting the award of punitive damages. *See, e.g.*, *Coffey v. Fayette Tublar Products*, 929 S.W.2d 326 (Tenn. 1996).

---

[8] As explained in *Hodges*, when a party seeks punitive damages, the trial court, upon motion, is to bifurcate the trial. *Hodges*, 833 S.W.2d at 901. During the first phase, the fact finder determines (1) liability for, and the amount of, compensatory damages and (2) liability for punitive damages; evidence of the defendant's financial affairs is not admissible. *Id.* In the second phase of the trial, the fact finder determines the amount of punitive damages. *Id.* During the second phase, the following factors should be considered to the extent relevant:

(1) The defendant's financial affairs, financial condition, and net worth;
(2) The nature and reprehensibility of defendant's wrongdoing, for example
    (A) The impact of defendant's conduct on the plaintiff, or
    (B) The relationship of defendant to plaintiff;
(3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;
(4) the duration of defendant's misconduct and whether defendant attempted to conceal the conduct;
(5) The expense plaintiff has borne in the attempt to recover the losses;
(6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;
(7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;
(8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and
(9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

### C. Evidentiary Issues

Mr. Vandagriff contends that the trial court erred in allowing the following testimony: Deputy Alonso to opine that the dispute between the parties was a civil matter; Assistant District Attorney Felicia Walkup to "give a 'what if' description of what could happen if an arrest warrant had been issued"; and Mr. Massingille "to testify what it was like to be Mr. Vandagriff's neighbor."

A trial court has a wide degree of latitude in its determination of whether to admit or exclude evidence. *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001). A trial court's evidentiary ruling will only be overturned on appeal upon a showing of abuse of discretion. *Otis v. Cambridge Mutual Fire Insurance Co.*, 850 S.W.2d 439, 442 (Tenn. 1992). A discretionary decision will be set aside only when the deciding court applied incorrect legal standards, reached an illogical conclusion, decided the case on a clearly erroneous assessment of the evidence, or employed reasoning that will cause injustice to the complaining party. *Konvalinka v. Chattanooga-Hamilton County Hospital Authority,* 249 S.W.3d 346, 358 (Tenn. 2008).

### 1. Testimony of Deputy Alonso

Citing Tenn. Rule Evid. 702, governing opinion testimony by expert witnesses, Mr. Vandagriff contends that the court erred in allowing Deputy Alonso to testify that "cutting bushes or trees on the property of another was a civil matter". We do not agree that the testimony at issue, viewed in context, was an opinion within the scope of Rule 702. [9]

The testimony occurred when Mr. Massingille's counsel asked Deputy Alonso about the conversation Deputy Alonso had with Mr. Vandagriff when responding to the call in March 2009 that Mr. Massingille was trespassing on the Vandagriff land. Deputy Alonso testified:

Q. All right. Do you recall what you told him? Why did you tell him that you were not going to arrest Mr. Massingile?
A. For one, he [Mr. Massingile] wasn't on his [Mr. Vandagriff] property when I was there, and for two, it's not a criminal matter.
Q. Okay.

---

[9] Mr. Vandagriff has not cited to the testimony of Deputy Alonso he contends was inappropriate; we have reviewed the entirety of Deputy Alonso's testimony and have quoted the testimony which pertains to Mr. Vandagriff's argument.

A. He [Mr. Massingile] didn't have criminal intent to come on his [Mr. Vandagriff] property to harm him.

Q. All right. And you told Mr. Vandagriff that?

A. Yes, I told him he needed to hire a lawyer, it's a civil matter.

This testimony is factual, not opinion testimony as Mr. Vandagriff asserts; Deputy Alonso merely testified as to what he told Mr. Vandagriff when asked to place Mr. Massingille under arrest. The trial court did not err in allowing this testimony.

## 2. Testimony of Assistant District Attorney Felicia Walkup

The testimony of Assistant District Attorney Walkup to which Mr. Vandagriff objects was elicited as Mr. Massingille's counsel asked General Walkup to explain the procedure by which Mr. Vandagriff obtained the criminal warrant and initiated the prosecution. General Walkup explained that there are two processes for initiating a criminal proceeding in Coffee County: (1) a law enforcement officer presents facts to a judicial commissioner who then issues an arrest warrant, allowing the individual to be arrested; and (2) a private citizen presents facts alleging a crime to a commissioner and, if appropriate, the commissioner will issue a criminal summons, which will require the individual to present themselves to the jail to be booked. General Walkup testified that when Mr. Vandagriff filed his affidavit of complaint, an arrest warrant was initially issued, but was later changed to a criminal summons by Gene Taylor, the supervising commissioner.

Mr. Vandagriff contends that the court erroneously overruled his objections to the following testimony:

Q. All right. And if it had not been changed to a criminal summons Mr. Massingile would have been arrested by a law enforcement officer, is that true?

A. Well, again, I can't tell you what would have happend.

Q. Is that what typically happens?

A. That's what typically happens.

Mr. Ewell: I'm going to object to what typically would have happened. She said she can't say what would have happen.

The Court: She's an assistant district attorney. She can testify to what typically happens.

***

Q. All right. Ms. Walkup, when a criminal arrest warrant issues, if it is not a summons, if it's an arrest warrant how does it then go to an arresting officer?
Mr. Ewell: Again, Your Honor, this has nothing to do with Mr. Vandagriff–
The Court: He can ask the process.
Mr. Ewell: –can influence that.
The Court: He can ask the process. He can ask the process.

Mr. Vandagriff argues that the testimony is irrelevant because Mr. Massingille was never arrested and because Mr. Vandagriff had no control over whether a warrant or summons was issued.

Relevant evidence is admissible in accordance with Tenn. R. Evid. 402; it can be excluded if the probative value is outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or waste of time. Tenn. R. Evid. 403. The trial court has discretion in determining if evidence meets the test for relevancy. *State v. Forbes,* 918 S.W.2d 431, 449 (Tenn. Crim. App.1995). Assessing the probative value and danger of unfair prejudice regarding the evidence also falls within the trial court's discretion. *State v. Burlison,* 868 S.W.2d 713, 720-21 (Tenn. Crim. App.1993). This court will only reverse a trial court's decision if the trial court abused that discretion. *State v. Williamson,* 919 S.W.2d 69, 78 (Tenn. Crim. App.1995).

The trial court did not abuse its discretion in allowing this testimony. In addition to generally informing the jury as to the manner in which a criminal prosecution is initiated by a private citizen, the evidence was relevant to the issue of Mr. Vandagriff's malice in initiating the criminal trespass proceedings. Through cross-examination, Mr. Vandagriff 's counsel elicited that Mr. Vandagriff had no control over the determination of whether a warrant or a summons would be issued and Mr. Massingille testified that he had not been arrested. Viewed in light of the entire evidence and issues in the case, the testimony of General Walkup was relevant and the jury was entitled to give it such weight as the jury deemed appropriate.

### 3. Testimony of Plaintiff

Mr. Vandagriff contends that the court erred in allowing certain testimony of Mr. Massingille, which Mr. Vandagriff characterizes as "evidence of the perceived unpleasantness of the plaintiff and defendant being neighbors and/or the 'loss of their friendship'" as an element of damages.

The testimony cited by Mr. Vandagriff was Mr. Massingille's testimony about his relationship with Mr. Vandagriff after the charges were filed; specifically, that there was

tension between the two, that he heard gun shots coming from the Vandagriff property, and that he could no longer work on his land that bordered the Vandagriff property because he feared Mr. Vandagriff would start shooting again. Mr. Vandagriff objected to the testimony of gunshots as speculative and "as an attempt to inflame things." The court found that this testimony was admissible because Mr. Massingille was describing his state of mind.

We are not persuaded that the court abused its discretion in allowing the testimony. At the time it was offered, Mr. Massingille was testifying as to the nature of his relationship with Mr. Vandagriff and as to events that had taken place after the criminal charges were filed; he testified that he heard gunshots coming from the Vandagriff property on more than one occasion and that, as a result, he and his wife were reluctant to have company, including their grandchild. This testimony was further explanatory of the circumstances surrounding the criminal prosecution and relevant as to whether Mr. Vandagriff's conduct in initiating and pursuing the prosecution rendered him liable for punitive damages.

### D. Remittitur of the Jury Award

Mr. Vandagriff asserted in his motion for new trial that the verdict was excessive and against the weight of the evidence; in his amended motion he requested, in the alternative, that the court grant a remittitur. The court suggested a remittitur of $40,000.00–the amount of the jury's award for loss of enjoyment of life. The suggestion was accepted under protest by Mr. Massingille; on appeal he contends that the evidence supported the award.

Remittitur is governed by Tenn. Code Ann. § 20-10-102.[10] In reviewing the trial court's suggestion of a remittitur, we employ a three-step process. First, we examine the

---

[10] Tenn. Code Ann. § 20-10-102 provides:

(a) In all jury trials had in civil actions, after the verdict has been rendered and on motion for a new trial, when the trial judge is of the opinion that the verdict in favor of a party should be reduced and a remittitur is suggested by the trial judge on that account, with the proviso that in case the party in whose favor the verdict has been rendered refuses to make the remittitur, a new trial will be awarded, the party in whose favor such verdict has been rendered may make such remittitur under protest, and appeal from the action of the trial judge to the court of appeals.

(b) The court of appeals shall review the action of the trial court suggesting a remittitur using the standard of review provided for in T.R.A.P. 13(d) applicable to decisions of the trial court sitting without a jury. If, in the opinion of the court of appeals, the verdict of the jury should not have been reduced, but the judgment of the trial court is correct in other respects, the case shall be reversed to that extent, and judgment shall be rendered in the court of appeals for the full amount originally awarded by the jury in the trial court.

reasons for the trial court's actions since adjustments are proper only when the court disagrees with the amount of the verdict. *Burlison v. Rose*, 701 S.W.2d 609, 611 (Tenn. 1985). Second, we evaluate the amount of the suggested adjustment since adjustments that totally destroy the jury's verdict are impermissible. *Foster v. Amcon Int'l, Inc.* 621 S.W.2d 142, 148 (Tenn. 1981); *Guess v. Maury*, 726 S.W.2d 906, 913 (Tenn. Ct. App. 1986). Third, we review the proof of damages to determine whether the evidence preponderates against the trial court's adjustments; the trial court enjoys a presumption of correctness regarding its findings of fact, unless the evidence provides otherwise. Tenn. Code Ann § 20-10-102 (b); Tenn. R. App. P. 13 (d).

In suggesting the remittitur when ruling on the motion for a new trial, the court stated that "[t]he verdict for Loss of Enjoyment of Life was outside the bounds of reasonableness and not supported by the evidence." In effect, the reason for the suggestion of remittitur was the court's belief that the evidence did not support any award for loss of enjoyment of life and that, consequently, the $40,000.00 which the jury awarded for that particular element made the entire $66,500.00 verdict unreasonable.[11] Consequently, the inquiry before us is whether the court correctly determined that the evidence did not support any award.

Arguing in his brief that there was evidence in support of the award, Mr. Massingile states: "[f]or over a year Massingille did not have the freedom to work on his property or enjoy his land for fear of Vandergriff confronting him, calling the police on him or pressing criminal charges against him, all of which he had previously done." We have viewed the testimony cited by Mr. Massingille in support of this contention and respectfully disagree that it supports a claim for loss of enjoyment of life.

The criminal prosecution was initiated on June 5, 2009 and terminated on August 17; the matters about which Mr. Massingille testified predated and postdated this time span and were not proximately caused by the prosecution of the trespass action. Rather, the fear of working on his property, of having his grandchild and visitors over, concern regarding shooting, and other similar matters are elements of mental anguish which we have discussed earlier. Considering the entire evidence and the elements of the verdict, Mr. Massingille's argument that the evidence supports an award for loss of enjoyment of life is tenuous. The evidence does not preponderate against the trial court's determination.

---

[11] We are led to this conclusion in light of the fact that the court did not suggest that the $40,000.00 award for loss of enjoyment of life be reduced rather than eliminated entirely.

### E. Other Evidentiary Matters

Without assigning particular error to any ruling or failure to rule on the part of the trial court, Mr. Vandagriff complains that "plaintiff set upon a deliberate course to attempt to introduce numerous irrelevant matters and claims not supported by admissible evidence which forced defendant to object or waive the issue." His brief contains several citations to the court's ruling on his objections to proffered testimony and jury out hearings to discuss evidentiary matters, all occurring on the first day of trial.

We have reviewed the citations to the transcript and find no impropriety in the manner in which the matters were raised or handled by the court; as noted above, Mr. Vandagriff does not assign error to any particular ruling. The record shows that when Mr. Vandagriff's counsel objected to the introduction of certain evidence, the court considered the objections, sustained some and overruled others. Giving appropriate deference to the trial court's determinations regarding the admissibility of evidence, we find no abuse of discretion in any ruling cited by Mr. Vandagriff.

## III. CONCLUSION

For the foregoing reason, we vacate the award of punitive damages and remand the case for the entry of a supplemental order setting forth the court's findings as to factors set forth in *Hodges v. S. C. Toof & Co.*; in all other respects the judgment of the trial court is affirmed.

_____
RICHARD H. DINKINS, JUDGE

-15-